TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, la Autoridad de Acueductos y Alcantarillados (la AAA o la recurrente) mediante el recurso de revisión administrativa presentado el 8 de octubre de 2007. Nos solicita que revoquemos la Resolución emitida por el Comité de Apelaciones para Empleados Gerenciales (el Comité) de la AAA el 24 de julio de 2007 y notificada el 6 de agosto de igual año. En la aludida Resolución, el Comité modificó la sanción de la destitución no sumaria de la Sra. Magda Ramos Ocasio (Sra. Ramos o la recurrida) dispuesta por el Presidente Ejecutivo de la AAA a una suspensión de empleo y sueldo por un período de veinticinco (25) días.
Examinados cuidadosamente los escritos de las partes, los documentos que acompañan los mismos, así como el derecho aplicable, resolvemos confirmar la Resolución recurrida.
I
Para el mes de febrero de 2004, la Sra. Ramos se desempeñaba como Secretaria Confidencial I en la Oficina de Administración y Servicios de la AAA. [1] Dicho puesto es considerado como uno gerencial de carrera.
El 30 de abril de 2004, el Sr. Juan Agosto Alicea, entonces Presidente Interino de la AAA, le envió a la Sra. Ramos una carta en la que le informó su intención de destituirla de su puesto en forma no sumaria por hechos ocurridos el 11 de febrero de 2004 relacionados a una conversación en la que alegadamente, con un tono de voz alto, la Sra. Ramos profirió ciertas palabras irrespetuosas a una compañera de trabajo, quien manifestó que se sintió ofendida. [2] En tal carta también se le advirtió de su derecho a solicitar una vista administrativa, la que fue oportunamente solicitada por la Sra. Ramos.
El 18 de noviembre de 2005, se celebró la vista administrativa informal, la cual fue presidida por la Sra. Gloria Flores Andino, Directora Auxiliar de Relaciones Laborales.
*930 Luego de dicha vista, el 9 de febrero de 2006, el Ing. Jorge Rodríguez, entonces Presidente Ejecutivo de la AAA, envió una carta a la Sra. Ramos en la que ratificó la intención de la AAA de destituirla de su puesto. [3] En dicha carta expresó: “[IJuego de analizar su testimonio [el de la Sra. Ramos] vertido en la vista y la evidencia documental que obra en el expediente de este caso, le informo que nos reafirmamos en la destitución no sumaria según notificada el 30 de ábril de 2004”. [4]
El 28 de febrero de 2006, la Sra. Ramos presentó ante el Comité una Apelación de la determinación de la AAA de 9 de febrero de 2006, en la que solicitó que se le archivaran todos lo's cargos que se le imputaron. [5] Adujo que el procedimiento disciplinario llevado a cabo por la AAA y el propio Comité violaba sus derechos; que no cometió los actos imputados; y que la AAA y sus funcionarios actuaban motivados por represalias. [6]
Atendida la Apelación, el 30 de abril de 2007, el Comité celebró la vista administrativa formal a la que compareció la Sra. Ramos con su representante profesional. Como testigo de la AAA compareció el Sr. Edwin Rivera Cardona (Sr. Rivera), quien para la mencionada fecha, trabajaba como Especialista de Recursos Humanos de la AAA y realizó la investigación del incidente que motivó el procedimiento disciplinario en contra de la recurrida. Como parte de esa gestión, el Sr. Rivera tomó declaraciones a los empleados involucrados y preparó un informe de los hechos imputados a la recurrida. La Sra. Ramos no fue entrevistada por el Sr. Rivera, ya que no compareció a las dos citaciones que le fueron entregadas. Como parte del informe preparado por el Sr. Rivera, éste recomendó que se destituyera a la Sra. Ramos de su empleo, por entender que el incidente acontecido el 11 de febrero de 2004 “viene a ser el tercero por el cual es acusada la Sra. Ramos por las mismas faltas al Reglamento de Normas de Conducta y Medidas Disciplinarias de la Autoridad de Acueductos y Alcantarillados”. [7]
Tras evaluar la evidencia testifical y documental ofrecida por ambas partes, el 24 de julio de 2007 el Comité emitió la Resolución aquí impugnada. Según surge de las Determinaciones de Hechos de dicha Resolución para el mes de febrero de 2004, la Sra. Iris Nydia Sosa Otero (la Sra. Sosa) se desempeñaba como Secretaria Ejecutiva II en la Oficina de la Administración de Servicios de la AAA, donde también trabajaba la Sra. Ramos y esta última ocupaba el escritorio frente al de la Sra. Sosa. [8] El Comité estimó probado que el 11 de febrero de 2004, la Sra. Ramos se dirigió a su compañera de trabajo, la Sra. Sosa, “en un tono de voz alto, expresándole que para lo que servía Sosa era para llevar y traer chismes, que estaba investigando un aumento de sueldo de $100.00 dólares que Sosa había recibido, que Sosa era de barrio y todo el mal que había hecho lo iba a pagar con sus hijos”. [9] El Comité además concluyó que “[la Sra. Sosa] se sintió ofendida, amenazada, entendió las expresiones de la apelante [la Sra. Ramos] como una falta de respecto y no se sentía segura en su área de trabajo en compañía de la apelante (la Sra. Ramos)”. [10] También encontró probado que la recurrida aceptó haber tenido un incidente con la Sra. Sosa el 11 de febrero de 2004. [11]
En la Resolución recurrida, el Comité también determinó que el Sr. Rivera declaró que al evaluar el caso de la Sra. Ramos, consideró las cartas que obraban en su expediente relacionadas a sanciones anteriores. Dichas cartas trataban sobre otros procesos disciplinarios contra la recurrida anteriores al evento de autos. Conforme a lo expuesto, la recurrida fue suspendida de empleo y sueldo por 21 días por un incidente ocurrido con un cliente de la AAA en noviembre de 1995. Posteriormente, fue suspendida de empleo y sueldo por 16 días laborables por hechos ocurridos en 2003. Ambas sanciones de la Sra. Ramos fueron por Actos o Lenguaje Irrespetuoso u Obsceno y Conducta Impropia. [12]
Como parte de sus Conclusiones de Derecho, el Comité resolvió que la recurrida utilizó lenguaje insolente e irrespetuoso contra una compañera de trabajo, lo que configuraba la falta de Actos o Lenguaje Irrespetuoso u Obsceno. Sin embargo, concluyó lo siguiente:
“El investigador Rivera Cardona [Sr. Rivera] recomendó la destitución de la apelante [la recurrida[ al considerar que la falta Actos o Lenguaje Irrespetuoso u Obsceno en la tercera ofensa conlleva destitución y la *931 falta Conducta Impropia en la segunda ofensa conlleva destitución. Entendemos que la determinación de la AAA no procede. Para fines de la sanción, no podemos considerar la suspensión de empleo y sueldo de 1996 por estar prescrita para estos propósitos... Por entender que no se configura la falta conocida como conducta impropia, la destitución no procede. ” [13] (Énfasis nuestro)
Además, determinó que:

“Este Comité de Apelaciones entiende que la apelante [la recurrida] incurrió por segunda ocasión en “Actos o Lenguaje Irrespetuoso u Obsceno ”, no así en conducta impropia ...”. 
[14]

A tenor de lo expuesto, el Comité modificó la sanción de la destitución impuesta a la Sra. Ramos por el Presidente Ejecutivo de la AAA a una suspensión de empleo y sueldo de veinticinco (25) días.
Insatisfecha con tal decisión, el 8 de octubre de 2008, la AAA presentó el recurso de epígrafe en el que señaló lo siguiente:

“Erró el Honorable Comité de Apelaciones al aplicar los artículos 11 y 12 a la presente controversia, actuando así irrazonablemente y en contravención a las disposiciones del Reglamento de Normas de Conducta y Medidas Disciplinarias de la AAA.

Erró el Honorable Comité de Apelaciones al determinar que no procedía la destitución no sumaria de la recurrida ante sus faltas previas, contrario a la evidencia que surge del expediente administrativo. ”

En la Resolución emitida el 4 de diciembre de 2007 concedimos a la Sra. Ramos el plazo de 15 días para que presentara su alegato de oposición, lo que cumplió el 2 de enero de 2008. En esencia, alegó que el proceso disciplinario en su contra no se había seguido de manera imparcial y de conformidad con el debido proceso de ley; que la AAA rehusó entregarle la totalidad del expediente disciplinario utilizado en su contra; y que existen motivos personales y represalias en su contra por unos alegados pleitos civiles que ella ha presentado contra la AAA y algunos de sus funcionarios. [15]
Con el beneficio de las comparecencias escritas de las partes, procedemos a resolver.
A
La facultad revisora de los tribunales a las decisiones emitidas por una agencia administrativa es limitada. “El alcance de la revisión judicial comprende tres áreas. Ellas son: (1) Concesión del remedio apropiado, (2) Revisión de las determinaciones de hechos conforme al criterio de evidencia sustancial, y (3) Revisión completa y absoluta de las conclusiones de derecho”. Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. ed., Bogotá, Forum, 2001, pág. 534.
La función revisora del tribunal, aunque restringida, tiene como propósito fundamental el delimitar la discreción de los organismos administrativos, además de velar porque sus actuaciones sean conformes a la ley y estén dentro del marco del poder delegado. T-JAC Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999); Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 129 (1998); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997).
Este ejercicio por parte del tribunal está enmarcado en dos principios fundamentales que postula la Ley Núm. 170 de 12 de agosto de 1988, conocida como Ley de Procedimiento Administrativo Uniforme (en adelante, L.P.A.U.). 3 L.P.R.A. § 2101 et. seq. “Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente *932 administrativo”. 3 L.P.R.A. §2175. Sin embargo, “[l]as conclusiones de derecho serán revisadas en todos sus aspectos por el tribunal. ” Id. Es por tanto indispensable que la agencia realice determinaciones de hechos y conclusiones de derecho que puedan proporcionar a los tribunales la base en la que descansó la decisión del organismo administrativo. De esta forma, los tribunales estarán en posición de descargar su función revisora responsablemente.
El criterio rector en la revisión judicial de una determinación de hechos de una agencia es la existencia de evidencia sustancial. A estos fines, se ha definido evidencia sustancial como “aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión ”. Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905 (1999); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 D.P.R. 425, 437 (1997); Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 687 (1953). Se ha reconocido la norma jurisprudencial de que, de ordinario, los tribunales no intervendrán en las determinaciones de hechos de las agencias, mientras exista evidencia sustancial en apoyo de las mismas. Pacheco v. Estancias de Yauco, 160 D.P.R. 409 (2003); Reyes Salcedo v. Policía de P.R., 143 D.P.R. 85, 109 (1997). Dicho análisis requiere que la evidencia sea considerada en su totalidad, incluyendo tanto aquélla que sostenga la decisión administrativa como también la que menoscabe el peso que la agencia le haya conferido. Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, pág. 437. Esta norma persigue evitar que los tribunales sustituyan el criterio de la agencia en asuntos enmarcados en su destreza y especialización por el criterio del tribunal revisor.
Para sostener la posición de que no existe evidencia sustancial que apoye las determinaciones de la agencia administrativa, la parte afectada debe demostrar que existe “otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada ... y hasta el punto que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba”. Metropolitan S.E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995). La prueba ofrecida deberá desfavorecer la presunción de que la determinación del organismo administrativo se desprende de la totalidad de la prueba que éste tuvo ante su consideración. Ramírez v. Depto. de Salud, supra; Chase Manhattan v. Emmanuelli Bauzá, 111 D.P.R. 708 (1981).
En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implante. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004); OEG v. Román, 159 D.P.R. 401 (2003); P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R 269. Esta norma no presupone que el tribunal revisor pueda descartar libremente las interpretaciones o conclusiones de la agencia administrativa, sino que les dará deferencia en la medida que éstas sean razonables. Misión Ind. de P.R. v. J.P., supra, a la pág. 132. Por tanto, el tribunal revisor sostendrá las conclusiones de la agencia mientras las mismas sean cónsonas con el propósito legislativo y no sean arbitrarias, ilegales o irrazonables. Id.', T-JACInc. v. Caguas Centrum Limited, supra, 80.
En aquellos asuntos que puedan ser catalogados como cuestiones mixtas de hecho y de derecho, la norma establecida es que la revisión judicial será análoga a la revisión de asuntos de derecho. Estos asuntos mixtos de hecho y de derecho surgen ordinariamente en ocasiones en las cuales existe confusión en cuanto a la aplicación del derecho a los hechos particulares del caso. Fernández Quiñones, Ob. Cit., pág. 561.
Por otro lado, los tribunales le han reconocido amplia discreción a las agencias administrativas en la imposición de sanciones y, en particular, en la selección de las medidas que le ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y la ley. Bajo esta doctrina, si la decisión administrativa está basada en evidencia sustancial y no es ultra vires y tiene además una relación razonable con los actos que se quieren prohibir, los tribunales brindarán considerable deferencia a la sanción impuesta por las agencias. ELA v. Frig, y Aim. del Turabo, Inc., 155 D.P.R. 27 (2001); Comisionado de Seguros v. Antilles Insurance Company, 145 D.P.R. 226 *933 (1998).
B
Por otro lado, el derecho a trabajar para ganar el sustento forma parte de nuestra Constitución, pues está íntimamente relacionado con el derecho a la vida. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Vol. 1, 1999, pág. 280.
En Amy v. Adm. Deporte Hípico, 116 D.P.R. 414, 421-422 (1985), el Tribunal Supremo expresó:
“El derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre, preexistente a la más antigua de las constituciones conocidas. El destino incierto de la frustrada Sec. 20 de nuestra Constitución, late entre aquellos derechos que aunque no se mencionan expresamente en el texto, el pueblo se reserva frente al poder político creado. Véanse: Constitución de Estados Unidos de América, Emda. Art. IX; Constitución del Estado Libre Asociado, Art. II, Sec. 19; Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791, 794-795 (1973). 4 Diario de Sesiones, págs. 2530-2532, 2539-2543, 2575-2577. En efecto, la Convención Constituyente tuvo muy presente expandir el alcance del concepto de “vida” como derecho inalienable del hombre. Uno de sus ilustres delegados, expresó en aquella ocasión la siguiente visión: “La palabra 'vida ’ contiene toda una serie de derechos aparte de la simple respiración, que no están incluidos necesariamente en la palabra “libertad” ni en la palabra “propiedad”. O sea, de eliminarse la palabra “vida” de esta frase tan consagrada en la historia de este gran derecho, se estaría haciendo un cambio fundamental en cuanto [a eso], principalmente ahora que se está expandiendo el área de los derechos humanos y ahora que se está reconociendo una segunda carta de derechos a la anterior clásica, tipo siglo XVII, y se están significando como derechos del hombre también en este documento, el derecho a la educación, el derecho al trabajo, el derecho a un nivel adecuado de vida. Todos estos derechos que abonan y que son necesarios para el debido desenvolvimiento de la personalidad humana están comprendidos fundamentalmente en la palabra “vida ”.

Al igual que todos los derechos fundamentales, el derecho al empleo no es absoluto. El derecho a un empleo particular puede ser perdido por causas debidamente justificadas dentro de un proceso de ley. En el caso del empleo privado, el Art. 2 de la Ley 80, 29 L.P.R.A., sec. 185b (a), considera justificado el despido de un obrero por “conducta impropia o desordenada”. En el caso del empleo público, “los empleados de carrera que han pasado por el proceso de reclutamiento y selección conforme al principio de mérito tienen un derecho de propiedad sobre su puesto, por lo que no podrán ser removidos del mismo sin justa causa y sin el debido proceso de ley." Camacho Torres v. AAFET, res. el 22 de mayo de 2006, 2006 JTS 97, 168 D.P.R. _ (2006). La justa causa se establece en la ley habilitadora de la agencia y el reglamento promulgado de conformidad con ella. ”

III
La AAA arguye, en esencia, que el Comité erró al aplicar las disposiciones de los artículos 11 (sobre acumulación de faltas) y 12 (referente a la prescripción) del Reglamento de Normas de Conducta y Medidas Disciplinarias (Reglamento de Normas de Conducta) para sustentar su determinación de que no procedía la destitución sumaria de la Sra. Ramos. Específicamente, alega que el Comité incidió al no considerar el incidente acaecido el 11 de febrero de 2004 con la Sra. Sosa como la tercera violación a la falta Actos o Lenguaje Irrespetuoso u Obsceno. Señala que del expediente de personal de la Sra. Ramos se desprende que por hechos surgidos el l10 de noviembre de 1995 con la cliente Sra. Iris de Jesús, en 1996, la recurrida fue suspendida de empleo y sueldo por veintiún (21) días laborables, [16] y que el 23 de octubre de 2003 sufrió otra suspensión por dieciséis (16) días por dirigirse irrespetuosamente a sus compañeros. [17]
La recurrente sostiene, por otro lado, que el Comité actuó irrazonablemente al concluir que no procedía considerar la suspensión de empleo y sueldo ocurrida en 1996 como parte de las “tres suspensiones de empleo y sueldo” que requiere el Reglamento de Normas de Conducta para que proceda la destitución de un empleado. *934 Asimismo, arguye que el Comité erró al interpretar que las disposiciones de los artículos 11 y 12 del aludido Reglamento, referentes a la acumulación de faltas distintas, aplica a la acumulación de faltas similares como en el caso de autos. Con relación a este último aspecto, la AAA precisa que la acumulación de faltas similares se rige por el Artículo 9 del Reglamento de Normas de Conducta, el cual establece, sin límite de tiempo alguno, que para la tercera falta constitutiva de Actos o Lenguaje Irrespetuoso u Obsceno procede la sanción de la destitución.
El aludido Reglamento, en su Artículo 9, cataloga la conducta constitutiva de falta en distintos grupos o niveles. El Grupo I proscribe, por ejemplo, las ausencias frecuentes, y el II, el descuido en el trabajo, entre otros actos.
En el Grupo III se incluye, en lo pertinente al recurso, los Actos o Lenguaje Irrespetuoso u Obsceno. Esta falta se define como:

“Realizar actos o usar lenguaje insolente, irrespetuoso, ofensivo, amenazante, indecoroso, indecente u obsceno contra supervisores, supervisados, compañeros o personas con quienes se relacione en su trabajo, dentro o fuera de horas laborables y del lugar del trabajo. ”

Para la primera ofensa por Actos o Lenguaje Irrespetuoso u Obsceno se establece la medida disciplinaria de la suspensión de empleo y sueldo de 16 a 20 días; para la segunda ofensa, suspensión de empleo y sueldo de 21 a 25 días, y para la tercera, la sanción de la destitución.
De otro lado, el Reglamento de Normas de .Conducta cataloga la falta de “Conducta Impropia” como una de Grupo IV y la describe como:

“Observar conducta impropia, lesiva, desordenada o que altere el orden dentro o fuera de horas laborables y del lugar de trabajo o predios de la Autoridad, de tal naturaleza que afecte el buen nombre, refleje descrédito, lesione la imagen o ponga en dificultad a la Autoridad. ”

Las medidas disciplinarias establecidas para tal conducta son para la primera ofensa, suspensión de empleo y sueldo de 21 a 25 días, y para la segunda, la destitución del empleo.
Por otra parte, el Reglamento de Normas de Conducta dispone en su artículo 11 lo siguiente:

“Artículo 11. Acumulación de Faltas

1. La comisión por parte del empleado de diferentes faltas sujetas a medidas correctivas o disciplinarias, que no sean la repetición de la misma falta, dentro de los períodos de prescripción que se establecen en el Artículo 12, se considerará como evidencia de que el empleado no puede adaptarse a las reglas y normas de conducta de la Autoridad y que debe separase del empleo.

2. Conforme se provee en el apartado anterior, se podrá destituir a todo empleado que reciba no menos de:

1. Cinco amonestaciones escritas; o

2. Tres suspensiones de empleo y sueldo; o

3. Una combinación de tres amonestaciones escritas y dos suspensiones de empleo y sueldo. ” (Énfasis nuestro)
En cuanto al período de prescripción, el Artículo 12 establece:

*935
“Artículo 12. Período de Prescripción para Acumulación de Faltas

(a) La constancia de las medidas disciplinarias impuestas a un empleado permanecerá siempre en su récord. Sin embargo, para los efectos de determinar la acumulación de faltas, se establecen los siguientes períodos de prescripción:

(1) Un año para aquellas faltas que hayan sido sancionadas con amonestación y para las ausencias y tardanzas no justificadas; y

(2) Tres años para toda otra falta.

(b) Los términos de prescripción aquí dispuestos no limitarán el uso del historial personal del empleado durante períodos anteriores en casos en que su presentación en evidencia sea pertinente. ” (Énfasis nuestro)
En la Resolución recurrida, el Comité determinó que la Sra. Ramos no incurrió en la falta de Conducta Impropia, por lo que habremos de ceñirnos a lo atinente a las faltas similares de Actos o Lenguaje Irrespetuoso u Obsceno.
En cuanto a este último aspecto, el Comité analizó las disposiciones del Artículo 12 sobre la prescripción y lo aplicó a las tres faltas similares incurridas por la recurrida. De este modo, resolvió que la falta sobre Actos o Lenguaje Irrespetuoso u Obsceno cometida por la Sra. Ramos en el 2004 no podía ser considerada como la tercera falta, en unión a las de 1996 y 2003, a los fines de aplicarle la sanción de la destitución debido a que la falta de 1996 no podía ser tomada en cuenta por haber ocurrido hacía más de tres años. Con ello, dicho foro administrativo extendió las disposiciones sobre prescripción a la acumulación de faltas similares.
Conforme a la normativa prevaleciente, este Foro puede revisar las determinaciones de derecho de una agencia en todos sus aspectos. No obstante, estamos llamados a observar cierta deferencia por el criterio de la agencia en la legislación o reglamentación que implanta. Así, debemos darle deferencia a la interpretación de la agencia si ésta es razonable.
Hemos analizado cuidadosamente el asunto de derecho ante nos conjuntamente con el razonamiento del Comité en la Resolución recurrida y concluimos que no procede variarlo ya que no es una interpretación irrazonable.
El Artículo 11 dispone que cuando un empleado comete diferentes faltas [18] dentro de los plazos de prescripción que establece el Artículo 12, se considerará que el empleado “no puede adaptarse a las reglas y normas de conducta de la Autoridad y que debe separarse del empleo”. [19] Para que ocurra la destitución o separación por incurrir en diferentes faltas, el empleado debe recibir no menos de cinco (5) amonestaciones escritas, o tres (3) suspensiones de empleo y sueldo, o una combinación de tres amonestaciones escritas y 2 suspensiones.
El Artículo 12, por otro lado, en su inciso (a) expone que permanecerá siempre en el récord del empleado la constancia de las sanciones disciplinarias impuestas. Dispone, además, que “para ... determinar la acumulación de faltas, ...” se establece, en lo pertinente al recurso ante nos, tres años de prescripción. Se exceptúan de este plazo las faltas que se hayan sancionado con amonestación y las ausencias y tardanzas injustificadas, [20] cuyo período de prescripción será 1 año.
Al analizar dicho Artículo 12, notamos que sus disposiciones se refieren a “la acumulación de faltas”, sin particularizar si son a “diferentes” faltas o faltas “similares”. Al contener una redacción amplia, no se sostiene el argumento de la AAA de que el término prescriptivo de tres años se refiere únicamente a la acumulación de *936 faltas diferentes. Tampoco queda avalada su postura debido a que el Artículo 12 no hace referencia o lo limita al Artículo 11. Es el artículo 11, referente a las faltas diferentes, el que se ata a los períodos prescriptivos del Artículo 12.
Además, no hemos encontrado en el Reglamento de Normas de Conducta alguna disposición que prohíba la aplicación de los períodos prescriptivos a la acumulación de faltas similares. El hecho de que el artículo 9 del aludido Reglamento contenga una gradación de medidas disciplinarias para faltas similares como los Actos o Lenguaje Irrespetuoso u Obsceno no margina, de suyo, la aplicación del período prescriptivo establecido en su artículo 12.
Finalmente, somos del criterio que resulta irrazonable tomar en consideración unos hechos acaecidos en el 1995 para sustentar la destitución de un empleado de carrera como determinó la AAA el 9 de febrero de 2006. Cónsono con ello, entendemos que el Comité no incidió en su interpretación del Artículo 12 del Reglamento de Normas de Conducta.
Al tenor de lo dicho, concluimos que el Comité no incurrió en los errores imputados por la recurrente AAA. Por ende, procede confirmar la resolución recurrida.
IV
Por los fundamentos expuestos, se confirma la Resolución emitida el 24 de julio de 2007 por el Comité de Apelaciones de la AAA.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 40

1. La Sra. Ramos comenzó a trabajar en la AAA en agosto de 1984. Alegato de la recurrida, pág. 7.

2. Apéndice de la recurrente, págs. 10, 72,73.

3. Apéndice de la recurrente, pág. 35. No surge del expediente qué, si algo, sucedió desde que la recurrida recibió la carta de 30 de abril de 2004 y el 18 de noviembre de 2005, fecha en que se celebró la yista informal. La Sra. Ramos aduce que a pesar de que recibió la carta de 30 de abril de 2004, indicándole de la intención de la AAA de destituirla por los hechos alegadamente acaecidos el 11 de febrero de 2004, no fue hasta el 9 de febrero de 2006 que volvió a recibir una comunicación de parte de la AAA indicándole de su intención de destituirla. Según la recurrida, esta última comunicación ocurrió luego de que ella presentará en abril de 2005 una demanda contra la AAA y algunos de sus funcionarios, entre ellos, el Sr. Virgilio Valentín y el Sr. Jorge Rodríguez. Alegato de la recurrida, pág. 4. El Sr. Valentín es miembro del Comité de Apelaciones de la AAA y fue parte de los hechos ocurridos el 23 de octubre de 2003, por los que se llevó una segunda acción disciplinaria contra la recurrida. Alegato de la recurrida, pág. 5.

4. Apéndice de la recurrente, pág. 136.

5. Apéndice de la recurrente, págs. 134-136.

6. Apéndice de la recurrente, pág. 135.

7. Apéndice de la recurrente, pág. 42.

8. Apéndice de la recurrente, págs. 79 y 83.

9. Apéndice de la recurrente, pág. 10.

10. Id.

11. Id.

12. Apéndice de la recurrente, págs. 11, 12, 68, 69, 71 y 76.

13. Apéndice de la recurrente, págs. 15-16. El Reglamento de Normas de Conducta y Medidas Disciplinarias, en su Artículo IX describe conducta impropia como una falta del grupo IV y la define como “observar conducta impropia, lesiva, desordenada o que altere el orden dentro o fuera de horas laborables y del lugar de trabajo o predios de la Autoridad de tal naturaleza que afecte el buen nombre, refleje descrédito, lesione la imagen o ponga en dificultad a la Autoridad”.

14. Apéndice de la recurrente, pág. 16.

15. Alegato de la recurrida, págs. 1, 4, 5 y 7.

16. Apéndice de la recurrente, pág. 70.

17. Apéndice de la recurrente, pág. 12. En 2003 a la recurrida se le imputó que "... arremetió contra sus compañeros de trabajo trayendo a colación asuntos personales de sus compañeros los cuales nada tiene (sic) que ver con lo laboral”. Apéndice de la recurrente, pág. 41.

18. Al referirse a las diferentes faltas, el Artículo 11 aclara “que no sean la repetición de la misma falta".

19. Apéndice el recurso, págs. 14 y 127.

20. Apéndice del recurso, págs. 15, 127y 128.