EPIFANIO ORTIZ CRUZ, demandante y recurrente, *v.* JUNTA HÍPICA DE PUERTO RICO, demandada y recurrida.

*Número*: R-73-120    *Resuelto*: 31 de octubre de 1973

*Armando Chaar Padín,* abogado del recurrente; *Ismael H. Herrero, Jr.,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Al rendir carrera al caballo Igneíto se le hizo una prueba química que dio positivo de habérsele administrado una

droga. Como consecuencia, a su entrenador el recurrente Epifanio Ortiz Cruz lé fue suspendida la licencia por término de 6 meses. (¹)

La base para su enjuiciamiento la provee el Reglamento Hípico cuyas secciones relevantes copiamos:

Art. 1104 (15 R.&R.P.R. sec. 186–1104)

"El dueño, entrenador, cuadrero y ayudante de cuadrero son responsables ante la Administración de la condición física de sus ejemplares y *será de su absoluta responsabilidad* velar por que ninguno de sus ejemplares se estimule, deprima o se le administre drogas o substancia alguna que pueda afectar la condición natural de los mismos." (Énfasis nuestro.)

Art. 1117 (15 R.&R.P.R. sec. 186–1117)

"Al [*sic*] Administrador, al recibir un informe del químico certificando que una muestra ha dado un resultado positivo de contenido de alguna droga o substancia que estimule, deprima o altere la condición natural de un ejemplar, suspenderá al ejemplar afectado y podrá suspender al dueño, entrenador, cuadrero o ayudantes de cuadrero relacionados con dicho ejemplar y así también todos los ejemplares pertenecientes a dicho dueño."

Art. 1401, inciso 55 (15 R.&R.P.R. sec. 186–1401 (55) )

"Cualquier infracción a las disposiciones de la Subdivisión II se castigará de la siguiente manera:

(1) Por la primera infracción suspensión por un término no menor de 6 meses.

(2) En caso de reincidencia, cancelación de licencia."

La decisión de la Comisión Hípica recoge una estipulación de las partes en controversia en el siguiente párrafo: "Las partes estipularon que en cuanto al querellado Epifanio Ortiz Cruz no hay prueba alguna de que él haya puesto o inyectado

---

(¹) Aun cuando el castigo se haya cumplido por no surtir efecto suspensivo el recurso de revisión el caso no es académico pues de prevalecer la decisión adversa al entrenador, en una infracción subsiguiente corre el riesgo de ser declarado "estorbo hípico" (15 R.&R.P.R. sec. 186–1119) con cancelación de su licencia y proscripción del hipódromo (15 R.&R.P.R. sec. 186–1001, inciso 17).

alguna substancia al ejemplar Igneíto el día de los hechos, que haya deprimido o estimulado dicho caballo o que haya intervenido en la condición física del mismo y que la suspensión impuesta por el Administrador Hípico es a base de las disposiciones del Art. 1104, que impone la *responsabilidad absoluta* al querellado apelante de la condición física de los ejemplares a su cargo." (Énfasis suplido.)

La Comisión Hípica y más tarde la Sala de San Juan del Tribunal Superior entendieron que no estando en controversia el hecho de ser el apelante entrenador de Igneíto ni la corrección del análisis químico, considerando los hechos estipulados y el principio de responsabilidad absoluta integrado en el Art. 1104 del Reglamento Hípico, no había más evidencia que considerar, y que no adoleciendo dicho artículo de invalidez constitucional, procedía el castigo. Acogimos la solicitud del entrenador y expedimos el auto.

La rigurosa atribución de responsabilidad incorporada al Reglamento Hípico es parte de la función reguladora de los juegos por el Estado y responde al propósito de proteger al público apostador en los hipódromos del engaño, el fraude y demás prácticas corruptas. Las jurisdicciones donde florece el deporte hípico han reconocido la dificultad de probar, siguiendo el método convencional evidenciario, el acto de administrar droga a un caballo, siempre encubierto por la más tupida clandestinidad y por el tiempo que inevitablemente transcurre desde que el animal recibe la droga hasta conocerse el resultado del análisis químico, y han enfrentado el problema de distinto modo: unos, como Puerto Rico, adoptando la Regla de responsabilidad absoluta validada en sus cortes; (²) y otros rechazando ésta por vulnerar la cláusula de debido proceso de ley y optando por una presunción rebatible

---

(²) California, *Sandstrom* v. *California Horse Racing Board*, (1948), 189 P.2d 17, *cert. denied* 335 U.S. 814; West Virginia, *State* v. *West Virginia Racing Comm.*, 55 S.E.2d 263; New Mexico, *Jamison* v. *State Racing Comm.*, 507 P.2d 426; Ohio, *Fogt* v. *Ohio State Racing Comm.*, 210 N.E.2d 730.

de culpa que puede ser superada en la vista por la prueba en contrario que ofrezca el dueño, entrenador, cuadrero o sus ayudantes. (³)

■ La Constitución del Estado Libre Asociado acoge dos principios que no toleran el purgatorio erigido en el Reglamento Hípico. Dispone su Art. II, Sec. 7 que ninguna persona será privada de su libertad o propiedad sin debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. Y más adelante la Sec. 16 del mismo Art. II de nuestra Constitución preceptúa: "Se reconoce el derecho de todo trabajador a escoger libremente su ocupación y a renunciar a ella...." (⁴)

■ Es incuestionable que la persona que libremente toma empleo de entrenador de caballos, por un acto de su exclusiva voluntad entra a un campo regulado por aquellas normas y reglas necesarias para proteger al público de los tahures o manipuladores de apuestas. Pero al mismo tiempo esa persona está ejerciendo su derecho a obtener un trabajo lícito del cual ha de derivar sustento y bienestar para todos los miembros de su familia, por lo que esa gestión no deberá convertirlo en ilota desposeído de las garantías básicas de debido proceso e igual protección de las leyes. Tan respetable es la política pública dirigida a preservar la limpieza del juego

---

(³) Maryland, *Mahoney* v. *Byers* (1946), 48 A.2d 600; Colorado, *Harbour* v. *Colorado State Comm.* (1973) 505 P.2d 22; Louisiana, *Lassistro* v. *State Racing Comm.* (1972) 269 So.2d 834; Puerto Rico (en la jurisdicción federal), *Mongil Suárez* v. *Admor. del Deporte Hípico,* Toledo, D.J. (Civil Núm. 915-71 Abril 25, 1973).

(⁴) El derecho de todo ciudadano de los Estados Unidos a seguir cualquier vocación lícita, negocio o profesión de su preferencia es característica que distingue nuestras instituciones republicanas. Aquí todas las ocupaciones están abiertas a todo el mundo en igualdad de condiciones. Todas pueden proseguirse como fuente para ganar el sustento .... El interés, o como se le llama algunas veces, el derecho adquirido en las mismas, que en sí es el derecho a continuar su disfrute, con frecuencia es de gran valor para el poseedor, y no le podrá ser arrebatado, como no puede quitársele su propiedad mueble o inmueble. *Dent* v. *West Virginia,* 129 U.S. 114.

en los hipódromos, como la ambición del hombre de ganar el pan en una de las ocupaciones que su patria le ofrece.

La atribución de responsabilidad absoluta sin derecho a defenderse es figura rara y tenebrosa en nuestro sistema jurídico. El concepto "absoluto" trae raíz y connotación ligadas al derecho divino de los reyes y a las facultades omnímodas de los gobernadores militares que desentonan con los principios de balance, igualdad y debido proceso de ley que informan la sociedad contemporánea. Es como un pájaro prehistórico desvelado ante una ecología transformada.

Una básica noción del Derecho, en toda la amplitud de su fuerza y amparo del hombre frente al Art. 1104 del Reglamento Hípico, nos conduce a rechazar la tremenda desigualdad en los medios de defensa entre una persona imputada de ofensa al orden social por negligencia en su trabajo y otra acusada por asesinato, aun reconociendo que las garantías constitucionales operan con mayor rigor cuando está en juego la libertad o la vida.

El derecho constitucional a un debido proceso de ley exige concesión de vista, previa oportuna y adecuada notificación, derecho a ser oído confrontándose con los testigos de cargo y a presentar prueba y argumentos en su defensa. *Morrisey* v. *Brewer* (1972) 408 U.S. 471, 487; *Goldberg* v. *Kelly* (1970) 378 U.S. 254, 267-8.

La vista que no permite prueba para demostrar la falta de culpa en el entrenador, a quien ninguna evidencia conecta con la droga inyectada a "Igneíto" es una mera formalidad, un vano artificio que solo hace expediente. El citado Art. 1104 del Reglamento Hípico está en pugna con las citadas disposiciones de la Constitución del Estado Libre Asociado de Puerto Rico y su invalidez es patente.

Se serviría bien al interés público en mantener la honradez e integridad de nuestro deporte hípico sustituyendo la norma inconstitucional de responsabilidad absoluta por una presunción general de negligencia susceptible de ser vencida

mediante evidencia de suficiente peso que produzca el encausado.

*Se revocará la sentencia revisada y se anularán los procedimientos seguidos y el castigo impuesto por la Comisión Hípica al recurrente por ser inconstitucional y nulo el Art. 1104 del Reglamento Hípico que rigió dichos procedimientos.*

El Juez Presidente, Señor Pérez Pimentel, y los Jueces Asociados, Señores Rigau y Martínez Muñoz, no intervinieron.