ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI DJ 2025-063

| | | |
|---|---|---|
| **JONATHAN D. KOTTHOFF**<br><br>Peticionario<br><br>v.<br><br>**VERONICA IRIZARRY BÁEZ**<br><br>Recurrida | TA2025AP00204 | **APELACIÓN** acogida como *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Caso Núm.:<br>**OPA-2025-055312**<br><br>Sobre:<br>Violencia Doméstica Ley Núm. 54 |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de septiembre de 2025.

Comparece ante nos el señor Jonathan David Kotthoff (Sr. Kotthoff o peticionario) mediante una *Apelación atemperada al formato de la Regla 70 de TA*.[1] Nos solicita que revoquemos al foro primario y ordenemos que se dejen sin efecto unas órdenes de

---

[1] El 27 de agosto de 2025, emitimos una *Resolución* donde acogimos el recurso de apelación como un auto de *certiorari*, conforme a la Regla 32 (C) del Reglamento del Tribunal de Apelaciones, según enmendada*, In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

protección incluyendo la OPA-2025-055312 emitida por el Tribunal de Primera Instancia, Sala Municipal de San Juan, (TPI) el 24 de abril de 2025, al amparo de la *"Ley para la prevención e intervención con la violencia doméstica"*, Ley Núm. 54 de 15 de agosto de 1989 (Ley Núm. 54-1989), según enmendada, 8 LPRA secs. 601 *et seq.*, contra la señora Verónica Irizarry Báez (Sra. Irizarry Báez o recurrida).[2] Por medio de dicha orden ex parte, el foro primario le concedió al Sr. Kotthoff la custodia provisional de su hijo menor de edad y le permitió recoger a su perro de servicio "Bartolo" de la residencia donde vivía con la Sra. Irizarry Báez.

El 15 de septiembre de 2025, la Sra. Irizarry Báez presentó una *Oposición a petición de certiorari y solicitud de desestimación.*

Por los fundamentos que pormenorizamos a continuación, se expide el auto de *certiorari* y se revoca la *Resolución denegando orden de protección* correspondiente a la OPA-2025-055312.[3]

**I.**

El caso de marras tiene su génesis el 24 de abril de 2025 cuando el Sr. Kotthoff radicó una *Petición de orden de protección*, al amparo de la Ley Núm. 54-1989, *supra*, contra la Sra. Irizarry Báez en el caso número OPA-2025-055312.[4] Adujo que ella lo amenazó con que no podía regresar a la vivienda, a menos que llevara dinero

---

[2] Apéndice de la *Apelación atemperada al formato de la Regla 70 de TA*, Anejo 1.
[3] *Íd.*, Anejo 2.
[4] *Íd.*, Anejo 3.

que ella demandó. El Sr. Kotthoff también expresó que la Sra. Irizarry Báez le indicó que, como abogada, ella sabía cómo decirle al tribunal y a otros lo que ella necesitaba para arruinarlo tanto a él como a su negocio; quitarle su hijo; y afectar su capacidad como proveedor. Por ende, suplicó varios remedios del foro *a quo* incluyendo la custodia provisional del menor y el perro.

Ese mismo día, luego de celebrar una vista ex parte, el foro primario emitió la OPA-2025-055312 con una vigencia desde el 24 de abril de 2025 hasta el 22 de mayo de 2025. El TPI expuso que las partes estaban separadas, pero casadas desde el 2019, y procrearon un hijo. En cuanto a las medidas afirmativas concedidas, ordenó a un agente de la policía a acompañar al Sr. Kotthoff a recoger sus pertenencias de la residencia incluyendo a su mascota de servicio. Además, determinó que las relaciones paternofiliales se podían coordinar a través de una tercera persona. En particular, el TPI marcó unos encasillados en la OPA-2025-055312, a través de los cuales, le adjudicó al Sr. Kotthoff la "custodia provisional del (de la) menor o de los (de las) menores siguiente(s) hasta que una Sala Superior del Tribunal de Primera Instancia disponga algo distinto"; y la "custodia provisional de la(s) mascota(s) pertenecientes a las partes de epígrafe".[5]

---

[5] *Íd.*, Anejo 1.

Por su parte, el 25 de marzo de 2025, la Sra. Irizarry Báez presentó una *Petición de orden de protección*, a la luz de la Ley Núm. 54-1989, *supra*, contra el Sr. Kotthoff en el caso número OPA-2025-055304.[6] Arguyó que el Sr. Kotthoff grabó cuando ella entraba y salía de la casa, al igual que conversaciones que sostuvo con ella. La Sra. Irizarry Báez expresó que el Sr. Kotthoff también controlaba y conocía de su ubicación por medio del auto y el teléfono. Sostuvo que el Sr. Kotthoff contactó a las amistades de ella para indicarles que le iba a quitar al menor para llevárselo a Estados Unidos, e iba a radicar procesos judiciales contra ella. Particularmente, expuso que, en mayo de 2024, luego de sostener una discusión fuerte con el Sr. Kotthoff, tuvo que llamar a la policía, pues el Sr. Kotthoff comenzó a preparar la maleta de su hijo para llevárselo. Por lo anterior, suplicó la custodia provisional del menor, entre otros remedios.

El mismo 25 de abril de 2025, el foro *a quo* emitió la OPA-2025-055304 contra el Sr. Kotthoff.[7]

El 27 de abril de 2025, bajo el caso SJL57-2025-0412, la Sra. Irizarry Báez presentó una *Petición de orden de protección*, al amparo de la *"Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores"*,

---

[6] *Íd.*, Anejo 5 corregido.
[7] *Íd.*

Ley Núm. 57 del 11 de mayo de 2023 (Ley Núm. 57-2023), según enmendada, 8 LPRA secs. 1641 *et seq.*, contra el Sr. Kotthoff.[8] En síntesis, arguyó que el menor fue diagnosticado con autismo desde hacía dos años, más el Sr. Kotthoff desconocía cómo cuidar de él y rechazó que se le proveyeran terapias y tratamiento al menor. La Sra. Irizarry Báez también alegó que temía que el Sr. Kotthoff se llevara al niño.

Ese mismo día, el foro primario celebró una vista ex parte y emitió una *Orden de protección ex parte*, al amparo de la Ley Núm. 57-2023, *supra*, contra el Sr. Kotthoff.[9] Además, consolidó los casos radicados por el Sr. Kotthoff y la Sra. Irizarry Báez; enmendó la OPA-2025-055312; y señaló una vista para el 16 de mayo de 2025.

Luego de múltiples trámites procesales, el de 2 de junio de 2025, el Sr. Kotthoff presentó una *Moción impugnación de órdenes de protección al amparo de la Ley Núm. 54 por violación al debido proceso de ley y solicitud de separación de causas.*[10] Adujo que no fue hasta la vista del 16 de mayo de 2025 que tanto él como su representante legal se enteraron, mediante la representante legal de la Sra. Irizarry Báez, que enmendaron la OPA-2025-055312 posteriormente para eliminar que el Sr. Kotthoff pudiese buscar a su perro de servicio y retener la custodia provisional del niño.

---

[8] *Íd.*, Anejo 7.
[9] *Íd.*, Anejo 8.
[10] *Íd.*, Anejo 11.

Expuso que, durante dicha vista, el foro primario indicó que indagaría al respecto y se trabajaría en la vista final. Alegó, sin embargo, que el TPI ratificó la OPA-2025-055312 enmendada y nunca se la notificó, contrario al debido proceso de ley. Por ende, solicitó la anulación de la OPA-2025-055304, que se reestableciera la OPA-2025-055312, que se separara la causa de acción del pleito número SJL57-2025-0412, y en la alternativa, que se celebrara una vista evidenciaria sobre las órdenes de protección expedidas al amparo de la Ley Núm. 54-1989, *supra.*

El 5 de junio de 2025, el Sr. Kotthoff presentó una *Moción en reconsideración a resolución* donde solicitó del foro primario que ordenara a la policía a entregarle unos documentos relacionados al incidente del 12 de mayo de 2024.[11]

A pesar de lo anterior, el TPI emitió una *Orden* del 10 de junio de 2025 en la que denegó dicha petición.[12] Específicamente, indicó que "las partes pueden traer cualquier evidencia que entiendan pertinente, Tribunal determinar[á] si la admite o no".[13]

Posteriormente, el TPI celebró una vista final los días 1 y 3 de julio de 2025 para determinar si expedía las órdenes de protección finales en los tres casos.[14]

---

[11] *Íd.*, Anejo 13.
[12] *Íd.,* Anejo 14.
[13] *Íd.*
[14] Véase, Regrabaciones presentadas por la Secretaria del TPI junto a la *Comparecencia Especial* radicada el 12 de septiembre de 2025.

El 2 de julio de 2025, el foro primario emitió una *Resolución sobre archivo de petición y orden de protección*, al amparo de la Ley Núm. 57-2023, *supra,* en el caso número SJL57-2025-0412, en la que dictaminó que no se configuraron los elementos constitutivos para expedir el remedio solicitado.[15]

El 3 de julio de 2025, el TPI expidió una *Orden de protección* bajo la Ley Núm. 54-1989, *supra,* en el caso número OPA-2025-055304 contra el Sr. Kotthoff por un término de ocho (8) meses, contados a partir de dicha fecha. Además, ordenó que el perro "Bartolo" permaneciera con la Sra. Irizarry Báez.[16]

Además, ese mismo día, el foro primario emitió una *Resolución denegando orden de protección* con relación a la OPA-2025-055312. Fundamentó su dictamen en que no se configuraron los elementos dispuestos en la Ley Núm. 54-1989, *supra*, para conceder una orden de protección final contra la Sra. Irizarry Báez. En su consecuencia, ordenó el cierre y archivo del asunto.

Insatisfecho, el Sr. Kotthoff radicó una *Moción de reconsideración de la OPA-2025-055304 y la OPA-2025-055312 [y] en solicitud de determinaciones de hechos adicionales en la resolución denegando la OPA-2025-055312* el 18 de julio de 2025.[17]

---

[15] Apéndice de la *Oposición a petición de certiorari y solicitud de desestimación*, *Resolución sobre archivo de petición y orden de protección*.

[16] *Íd.*, *Orden de protección*.

[17] Apéndice de la *Apelación atemperada al formato de la Regla 70 de TA*, Anejo 18.

Reiteró que el foro primario violó su debido proceso de ley al enmendar la OPA-2025-055312 con prueba extrínseca y sin la presencia de él, e incumplió con su deber de notificarle la OPA-2025-055312 enmendada. Además, expuso que el foro primario coartó la posibilidad de defenderse en la vista final al negarle acceso a la prueba policiaca que suplicó. De igual modo, arguyó que el foro primario violó el *Americans with Disabilities Act* al obligar a una persona con un perro de servicio a defenderse ante cuestionamientos sobre si la mascota era de servicio.

Además, el 4 de agosto de 2025, el Sr. Kotthoff presentó ante nos un recurso de apelación, acogido como un recurso de *certiorari*, en el que realizó los siguientes señalamientos de error:

> **ERRÓ EL TPI AL ENMENDAR DE FORMA EX PARTE LA OPA-2025-055312 UTILIZANDO EVIDENCIA EXTRÍNSECA, SIN NOTIFICAR AL SR. KOTTHOFF, SIN DARLE DERECHO A CONFRONTAR LA PRUEBA Y SIN OPORTUNIDAD DE PRESENTAR PRUEBA A SU FAVOR Y EN AUSENCIA DEL SR. KOTTHOFF, APELANTE DEL CASO.**
>
> **ERRÓ EL TPI AL NO CELEBRAR LA VISTA EVIDENCIARIA SOLICITADA NI EMITIR DETERMINACIONES DE HECHO NI CONCLUSIONES DE DERECHO SOBRE LA MOCIÓN DE IMPUGNACIÓN DE ÓRDENES DE PROTECCIÓN AL AMAPRO [SIC] DE LA LEY 54 POR VIOLACIÓN AL DEBIDO PROCESO DE LEY Y SOLICITUD DE SEPARACIÓN DE CAUSAS Y POR NEGARLE AL SR. KOTTHOFF LA POSIBILIDAD DE DEFENDERSE AL DECLARARLE NO HA LUGAR LA SOLICITUD DE ORDEN PARA DESCUBRIR DOCUMENTOS.**

Por su parte, la Sra. Irizarry Báez presentó una *Oposición a petición de certiorari y solicitud de desestimación* el 15 de septiembre de 2025. Sostuvo que las decisiones del foro primario gozaban de deferencia y no procedía la expedición del auto de *certiorari,* conforme la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40. Además, planteó que no se le violentó el debido proceso de ley al Sr. Kotthoff, pues se le notificó adecuadamente del proceso con relación a las tres órdenes de protección; el procedimiento fue ante un juez imparcial; tuvo la oportunidad de ser oído; el tribunal le proveyó una traductora certificada; tuvo derecho de examinar la prueba presentada en su contra y de contrainterrogar testigos; estuvo asistido de abogados; y la determinación estuvo basada en la prueba presentada y admitida en juicio. Por último, suplicó la desestimación del recurso conforme la Regla 83(B)(5) del Reglamento del Tribunal de Apelaciones, *supra,* R. 83(B)(5).

## II.

## A.

El auto de *certiorari* es el vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del tribunal. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, 207 DPR 994, 1004 (2021); *800 Ponce de León, Corp. v. American International Insurance*

*Company of Puerto Rico*, 205 DPR 163, 174 (2020). En los casos civiles, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita los asuntos aptos para revisión interlocutoria ante el Tribunal de Apelaciones mediante el recurso de *certiorari*. *Caribbean Orthopedics Products of Puerto Rico, LLC v. Medshape, Inc.*, *supra*, pág. 1004; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 486-487 (2019); *IG Builders v. BBVAPR*, 185 DPR 307, 336 (2012). La citada regla establece que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Regla 52.1 de Procedimiento Civil, *supra* (Énfasis suplido); véase además, *Scotiabank de Puerto Rico v. ZAF Corporation*, *supra*, pág. 487.

En lo pertinente, el Tribunal de Apelaciones goza de facultad para revisar, por medio del auto de *certiorari*, las órdenes de

protección emitidas por el foro de instancia. Regla 32(C) del Reglamento del Tribunal de Apelaciones, *supra*, R. 32(C).

Según mencionado, la característica distintiva del recurso de *certiorari* "se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. El concepto *discreción* necesariamente implica la facultad de elegir entre diversas opciones". *IG Builders v. BBVAPR*, *supra*, pág. 338. A pesar de lo anterior, la discreción no debe hacerse en abstracción del resto del derecho, sino que debe ejercerse de forma razonable con el propósito de llegar a una opinión justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). Precisamente, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, instituye los criterios que el foro apelativo debe tomar en consideración para poder ejercer sabiamente su facultad discrecional de expedir un auto de *certiorari*. Estos factores son los siguientes:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone al Tribunal de Apelaciones la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. Por tanto, de no estar presente ninguno de los criterios esbozados, procede que este foro superior se abstenga de expedir el auto solicitado. *Torres Martínez v. Torres Ghigliotty*, *supra*, págs. 96-97.

**B.**

La Constitución del Estado Libre Asociado establece que "[n]inguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley". Art. II, Sec. 7, Const. P.R., LPRA, Tomo 1, ed. 2023, pág. 305; véase además, Emda. V, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 190; Emda. XIV, Sec. 1, Const. EE. UU., LPRA, Tomo 1, ed. 2023, pág. 209. A esos efectos, es harto conocido que el debido proceso de ley es un derecho fundamental que "encarna la esencia de nuestro sistema de justicia". *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109 (1996). Además, se define como aquel "derecho de toda persona a tener un proceso justo

y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Particularmente, el debido proceso de ley se manifiesta en dos vertientes; sustantivo y procesal. *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 887 (1993); *Rodríguez Rodríguez v. Estado Libre Asociado de Puerto Rico*, 130 DPR 562, 576 (1996).

Bajo el debido proceso de ley sustantivo, "los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas". *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 887; *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 273 (1987). De este modo, al probar leyes o al realizar alguna actuación, el Estado está vedado de afectar irrazonable, arbitraria o caprichosamente los intereses de propiedad o libertad. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 887.

Por otro lado, mediante la vertiente procesal, el Estado posee la obligación de garantizar que la interferencia con los intereses de propiedad y libertad del individuo se realice a través de un proceso que sea justo y equitativo. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, págs. 887-888; *López Vives v. Policía de P.R.*, 118 DPR 219, 231 (1987). Para que entre en vigor el debido proceso de ley procesal

debe tratarse de un interés individual de libertad o propiedad. *Rivera Santiago v. Srio. de Hacienda, supra*, págs. 273-274. El Tribunal Supremo de Puerto Rico expuso que:

> La característica medular de este derecho es que el procedimiento que siga el Estado sea justo (*fair*). *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987). "La garantía esencial de la cláusula de debido proceso es que sea justa. El procedimiento debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad. Si bien situaciones diferentes pueden imponer diferentes tipos de procedimientos, siempre está el requisito general de que el proceso gubernamental sea justo e imparcial." (Traducción nuestra.) [R.D. Rotunda, J.E. Nowak y J.N. Young, Treatise on Constitutional Law: Substance and Procedure, Minnesota, West Pub. Co., 1986,] Sec. 17.8.
>
> *Hernández v. Secretario*, 164 DPR 390, 395 (2005) (Énfasis suplido en el original).

Una vez cumplida esta exigencia, se debe determinar cuál es el proceso exigido. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 888. Dentro de los procesos adversativos, existen varios requisitos que se deben satisfacer para garantizar las exigencias mínimas del debido proceso de ley; a saber, (1) la notificación oportuna y adecuada del proceso; (2) el derecho a ser oído; (3) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (4) la asistencia de un abogado; (5) la presencia de un juzgador imparcial; y (6) una decisión que se fundamente en la prueba presentada y admitida en juicio.

*Hernández v. Secretario, supra*, págs. 395-396; *López y otros v. Asoc. de Taxis de Cayey, supra*; *Ortiz Cruz v. Junta Hípica*, 101 DPR 791, 795 (1973). En particular, " '[l]a notificación es parte integral de una actuación judicial y para que una resolución u orden surta efecto, tiene que ser no solamente emitida por un tribunal con jurisdicción, sino también notificada adecuadamente a las partes ya que es a partir de la notificación que comienzan a cursar los términos establecidos' ". *Banco Popular v. Andino Solís*, 192 DPR 172, 183 (2015 (*citando a* R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 5ª ed. rev., San Juan, Ed. LexisNexis, 2010, pág. 193). Por lo tanto, "una notificación defectuosa o la ausencia de esta, incide sobre los derechos de las partes, enervando así las garantías procesales que estamos llamados a proteger". *Banco Popular v. Andino Solís, supra*, págs. 183-184.

## C.

Por otro lado, la Ley Núm. 54-1989, *supra*, establece una serie de medidas con el propósito de prevenir y combatir la violencia doméstica en Puerto Rico; facultar a los tribunales a expedir órdenes de protección para las víctimas de violencia doméstica; establecer un proceso fácil y expedito para el trámite y adjudicación de órdenes, entre otros asuntos. Esta ley define la *violencia doméstica* como "un comportamiento antisocial que constituye un serio problema para la familia puertorriqueña. Se trata del maltrato físico

y emocional que sufre una persona a manos de su cónyuge o ex-cónyuge, o a manos de una persona con quien sostiene o ha sostenido una relación íntima". Ley Núm. 54-1989, *supra* (Exposición de Motivos). También significa:

> [E]l empleo de fuerza física o violencia psicológica, intimidación o persecución o violencia económica contra una persona por parte de su cónyuge, excónyuge, una persona con quien cohabita o haya cohabitado, con quien sostiene o haya sostenido una relación consensual o una persona con quien se haya procreado una hija o un hijo, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación, para causarle daño físico a su persona, sus bienes o a la persona de otro o al animal de compañía o mascota de la víctima, de los hijos o del victimario para causarle grave daño emocional.

Artículo 1.3(v) de la Ley Núm. 54-1989, *supra*, sec. 602.

La Ley Núm. 54-1989, *supra*, reconoce que la violencia doméstica es "uno de los problemas más graves y complejos que confronta nuestra sociedad" y "lacera la integridad y dignidad de toda víctima, independientemente del sexo, estado civil, orientación sexual, identidad de género o estatus migratorio de cualquiera de las personas involucradas en la relación". Artículo 1.2 de la Ley Núm. 54-1989, *supra*, sec. 601 (Énfasis suplido); *In re Santiago Concepción*, 189 DPR 378, 405-406 (2013); *Pueblo v. Pérez Feliciano*, 183 DPR 1003, 1008 (2011). Además, atenta contra la integridad "de su familia y de los miembros de ésta y constituye una seria

amenaza a la estabilidad y a la preservación de la convivencia civilizada de nuestro pueblo". Artículo 1.2 de la Ley Núm. 54-1989, *supra,* sec. 601. De hecho, los niños que sufren de violencia doméstica o proceden de hogares donde ocurren incidentes de esta índole, "llevan consigo por toda la vida la huella y los patrones de la violencia". Ley Núm. 54-1989, *supra* (Exposición de Motivos).

Nuestro máximo foro ha expresado que "como integrantes de la Rama Judicial, estamos comprometidos a contribuir a erradicar de nuestra sociedad este grave problema". *In re Santiago Concepción, supra,* pág. 406. Para proteger a las víctimas, la Ley Núm. 54-1989, *supra,* expone que los jueces del TPI poseen la facultad para dictar medidas afirmativas por medio de la expedición de órdenes dirigidas al agresor. Lo anterior, para que este se abstenga de incurrir en determinada conducta respecto a la víctima. (Exposición de Motivos).

Una orden de protección es "todo mandato expedido por escrito bajo el sello de un tribunal, en la cual se dictan las medidas a un agresor para que se abstenga de incurrir o llevar a cabo determinados actos o conducta constitutivos de violencia doméstica". Artículo 1.3(l) de la Ley Núm. 54-1989, *supra,* sec. 602. Cualquier persona de 18 años o más que haya sido víctima de violencia doméstica o de conducta constitutiva de delito dentro de una relación de pareja puede radicar una petición de orden de

protección sin que sea necesaria la radicación de una denuncia o acusación previa. Artículo 2.1 de la Ley Núm. 54-1989, *supra*, sec. 621; Artículo 2.3 de la Ley Núm. 54-1989, *supra*, sec. 623. El procedimiento para obtener una orden de protección se puede comenzar: "(1) [m]ediante la radicación de una petición verbal o escrita; o (2) dentro de cualquier caso pendiente entre las partes[;] o (3) a solicitud del Ministerio Fiscal en un procedimiento penal, o como una condición para una probatoria o libertad condicional". Artículo 2.3 de la Ley Núm. 54-1989, *supra*, sec. 623 (Énfasis suplido en el original eliminado).

Una vez se radica la petición de orden de protección, según dispuesto por ley, el tribunal debe expedir una citación a las partes bajo apercibimiento de desacato para una comparecencia dentro de un término que no debe exceder de cinco (5) días. Artículo 2.4(a) de la Ley Núm. 54-1989, *supra*, sec. 624. El tribunal también puede emitir una <u>orden de protección ex parte</u> "cuando la parte peticionaria demuestre que existe una probabilidad sustancial de riesgo inmediato de maltrato". Artículo 2.5(c) de la Ley Núm. 54-1989, *supra*, sec. 625. Siempre que el tribunal expida una orden de protección ex parte, lo debe hacer con carácter provisional, debe notificar inmediatamente, y dentro del término que no puede exceder de cuarenta y ocho (48) horas a la parte peticionada, con copia de dicha orden o de cualquier otra forma, brindándole la

oportunidad de oponerse a la misma. A esos efectos, debe señalar una vista a celebrarse dentro de veinte (20) días, de haberse expedido la orden ex parte, a menos que la parte peticionada solicite una prórroga. Durante la vista el tribunal puede dejar sin efecto la orden o extender sus efectos por el tiempo que estime necesario. Artículo 2.5(c) de la Ley Núm. 54-1989, *supra*, sec. 625.

Como requisito de todas las vistas de expedición de orden de protección, al amparo de la Ley Núm. 54-1989, *supra*, los magistrados que presiden la misma, tienen la obligación de hacer constar por escritos breves determinaciones de hecho y conclusiones de derecho, en las determinaciones de causa y en las de no causa para expedir la orden de protección. Artículo 2.1 de la Ley Núm. 54-1989, *supra*, sec. 621; Artículo 2.6 de la Ley Núm. 54-1989, *supra*, sec. 626. Además, de incluir determinaciones, las órdenes de protección deben establecer los remedios ordenados, el periodo de vigencia, la fecha y hora en que fue expedida, y notificar expresamente a las partes las consecuencias de cualquier violación, entre otros. Artículo 2.6(a) y (b) de la Ley Núm. 54-1989, *supra*, sec. 626.

Ahora bien, después de que se le notifique la orden a la parte peticionada, "un alguacil del Tribunal desde donde se otorgue la misma, tendrá un término de tiempo no mayor de veinticuatro (24) horas para informarle, personalmente, a la parte peticionaria, que

se ha efectuado tal diligenciamiento". Artículo 2.7(c) de la Ley Núm. 54-1989, *supra*, sec. 627. De igual modo, la secretaría debe enviarle copia de las órdenes de protección a la dependencia de la Policía encargada de mantener un expediente de las órdenes de protección así expedidas, entre otros lugares. Artículo 2.7(d) de la Ley Núm. 54-1989, *supra*, sec. 627; Artículo 2.7 de la Ley Núm. 54-1989, *supra*, sec. 627. Aun así, el Artículo 2.7(a) de la Ley Núm. 54-1989, *supra*, sec. 627, dispone que "[l]a secretaría del tribunal proveerá copia de la misma, a petición de las partes o de cualesquiera personas interesadas". (Énfasis suplido).

## III.

En el caso de marras, el Sr. Kotthoff planteó dos señalamientos de error. Primero, sostuvo que el foro primario incidió al enmendar de forma ex parte la OPA-2025-055312, utilizando prueba extrínseca, sin concederle el derecho de confrontar y presentar prueba a su favor, y al no notificarle la OPA-2025-055312 enmendada. Segundo, el Sr. Kotthoff arguyó que el TPI erró al no celebrar una vista evidenciaria, al no emitir determinaciones de hechos ni conclusiones de derecho sobre la moción que él presentó para impugnar las órdenes de protección, y al declarar No Ha Lugar su petición de orden para descubrir documentos policiacos.

Según la *Resolución denegando orden de protección* con la OPA-2025-055312, el foro primario determinó que no se

configuraron los elementos dispuestos en la Ley Núm. 54-1989, *supra*, para conceder una orden de protección final en contra de la Sra. Irizarry Báez. En su consecuencia, ordenó el cierre y archivo del asunto.

Inconforme, el Sr. Kotthoff expuso ante nos que no fue hasta la vista del 16 de mayo de 2025 que se enteró que el TPI enmendó ex parte la OPA-2025-055312 para eliminar la adjudicación de la custodia provisional de su hijo y su perro de servicio. Adujo además que el foro primario nunca le notificó la OPA-2025-055312 enmendada, aun ante sus objeciones durante la vista del 16 de mayo de 2025. Arguyó que, aunque el foro primario celebró una vista final los días 1 y 3 de julio de 2025, ello no subsanó la violación a su debido proceso de ley; específicamente, respecto a la garantía que tenía a una notificación adecuada del proceso. De igual modo, arguyó que el TPI le coartó la posibilidad de adquirir evidencia policiaca para defenderse durante la vista final.

Por su parte, la Sra. Irizarry Báez solicitó que se confirmara la determinación del foro primario y/o se desestimara el recurso de epígrafe, al amparo de la Regla 83(B)(5) del Reglamento del Tribunal de Apelaciones, *supra*.

Tras un análisis objetivo y cuidadoso, resolvemos que el foro primario incurrió en el primer señalamiento de error.

Tal como pormenorizamos anteriormente, en los procesos adversativos, existen varios requisitos que se deben satisfacer para garantizar las exigencias mínimas del debido proceso de ley incluyendo una notificación oportuna y adecuada del proceso. *Hernández v. Secretario, supra*, págs. 395-396; *López y otros v. Asoc. de Taxis de Cayey, supra*; *Ortiz Cruz v. Junta Hípica*, 101 DPR 791, 795 (1973). Precisamente, "una notificación defectuosa o la ausencia de esta, incide sobre los derechos de las partes, enervando así las garantías procesales que estamos llamados a proteger". *Banco Popular v. Andino Solís, supra*, págs. 183-184. Cónsono con lo anterior, además de notificarles las órdenes de protección a la parte peticionada, la parte peticionaria y las diferentes agencias, el Artículo 2.7(a) de la Ley Núm. 54-1989, *supra*, sec. 627, expone que "[l]a secretaría del tribunal proveerá copia de la misma, a petición de las partes o de cualesquiera personas interesadas". Véase además, Artículo 2.7 de la Ley Núm. 54-1989, *supra*, sec. 627 (Énfasis suplido).

En el presente caso, el TPI emitió una orden de protección ex parte, de carácter provisional, bajo el pleito número OPA-2025-055312 el 24 de abril de 2025. De la misma se desprende que el foro primario expuso que "[s]e ordena a que un agente de la policía acompañe al peticionario a recoger sus pertenencias en la residencia incluyendo su perro de servicio, 'Bartolo'. Las relaciones

paternofiliales se podr[á]n coordinar a trav[é]s de una tercera persona".[18] El foro *a quo* también marcó los encasillados adjudicándole al Sr. Kotthoff "la custodia provisional del (de la) menor o de los (de las) menores siguiente(s) hasta que una Sala Superior del Tribunal de Primera Instancia disponga algo distinto", y la "custodia provisional de la(s) mascota(s) pertenecientes a las partes de epígrafe".[19]

Sin embargo, según se desprende de la regrabación de la vista *ex parte* celebrada el 27 de abril de 2025 en el caso número SJL57-2025-0412,[20] y en la cual no se encontraba el Sr. Kotthoff sino la Sra. Irizarry Báez y su representante legal, el foro primario enmendó la OPA-2025-055312 que solicitó el propio Sr. Kotthoff. Específicamente, indicó que, previo a comenzar la vista, deseaba aclarar que revisó los expedientes, y que por un error en la secretaría se le adjudicó la custodia provisional del menor al Sr. Kotthoff en la OPA-2025-055312. Fundamentó lo anterior en que surgía de las determinaciones de hechos de dicha orden que no se le adjudicó custodia provisional, sino que únicamente se señaló que las relaciones paternofiliales se podían coordinar a través de un tercero. Además, sostuvo que al emitir la *Orden de protección ex parte*, al amparo de la Ley Núm. 57-2023, *supra*, quedó sin efecto la

---

[18] *Íd.*, Anejo 1.
[19] *Íd.*
[20] *Íd.*, Anejo 8.

disposición sobre las relaciones paternofiliales. Ante lo anterior, el TPI le informó a la Sra. Irizarry Báez y a su representante legal que no se fueran de la vista hasta que le entregaran la orden enmendada.

De igual modo, el foro *a quo* expresó que iba a enmendar la orden también a los efectos de eliminar la disposición por la que autorizó al Sr. Kotthoff a que se llevara de la residencia al perro "Bartolo" como una de sus pertenencias, y citó al Sr. Kotthoff y al Departamento de la Familia a una vista el 16 de mayo de 2025.

Sin embargo, no fue hasta el 16 de mayo de 2025, que el Sr. Kotthoff se enteró de la enmienda de la OPA-2025-055312 y levantó ante el foro primario la violación a su debido proceso de ley. El 1 de julio de 2025, la representante legal del Sr. Kotthoff expresó nuevamente ante el TPI que, por medio de quien fungía como abogada de la Sra. Irizarry Báez, se enteraron que el TPI enmendó la OPA-2025-055312 durante una vista ex parte y reiteró que no recibieron la orden ex parte enmendada.[21] A pesar de dichos señalamientos, el foro *a quo* nunca le notificó al Sr. Kotthoff la OPA-2025-055312 enmendada, y procedió a celebrar la vista final los días 1 y 3 de julio de 2025.

Es meritorio señalar que la OPA-2025-055312 fue expedida contra la Sra. Irizarry Báez, empero también contenía remedios

---

[21] Véase, Regrabaciones presentadas por la Secretaria del TPI junto a la *Comparecencia Especial* radicada el 12 de septiembre de 2025.

otorgados a favor del Sr. Kotthoff; siendo estos, la custodia del menor y de la mascota. En otras palabras, según expuso el Sr. Kotthoff en sus escritos, este pensaba que contaba con esos beneficios desde que se expidió la OPA-2025-055312 el 24 de abril de 2025. Sin embargo, no fue hasta la vista del 16 de mayo de 2025, que se enteró que ya no contaba con esos remedios.

Luego de un examen sosegado del expediente, no existe duda de que, a pesar de las objeciones de la representación legal del Sr. Kotthoff, el TPI nunca le notificó al Sr. Kotthoff la OPA-2025-055312 enmendada. Dicha actuación violó el debido proceso de ley del Sr. Kotthoff, específicamente, su derecho a una notificación adecuada y oportuna de los procedimientos, garantía que emana de ambas constituciones.

Por ende, el foro primario incidió en el primer error señalado por el Sr. Kotthoff. En su consecuencia, se expide el auto de *certiorari* y se revoca la *Resolución denegando orden de protección* correspondiente a la OPA-2025-055312 para que dicho tribunal **notifique** de forma fehaciente la presunta orden enmendada y luego celebre los procedimientos nuevamente incluyendo una vista final nueva con el propósito de determinar si se expide una orden de protección final en contra de la Sra. Irizarry Báez. Dado a que el segundo señalamiento de error está relacionado al tracto procesal

que comenzará a de cursar de nuevo, no nos expresaremos sobre el mismo.

**IV.**

Por los fundamentos antes expresados, se expide el auto de *certiorari* y se revoca el dictamen correspondiente a la OPA-2025-055312 ante la falta de notificación de la presunta orden ex parte enmendada. Se resalta que no intervenimos en los asuntos correspondientes a otras órdenes emitidas en este caso incluyendo la OPA-2025-055304 que permanece vigente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones