ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| **DEPARTAMENTO DE LA FAMILIA**<br><br>Recurrido<br><br>v.<br><br>**NORALIS RAMOS OTERO y OTROS**<br><br>Peticionarios | TA2026CE00081 | **CERTIORARI** procedente del Tribunal de Primera Instancia, Sala Superior de **Arecibo**<br><br>Civil Núm.: **VB2025MM00001**<br><br>Sobre: Falta de Atención de Salud |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2026.

Comparece ante nos la señora Noralys Ramos Otero (señora Ramos Otero o peticionaria), mediante el presente recurso de *certiorari*, y solicita que intervengamos con la *Orden* emitida el 19 de diciembre de 2025, notificada el 22 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI).[1]

En el aludido dictamen, el TPI denegó la *Urgente moción en solicitud* presentada por la parte peticionaria el 17 de diciembre de 2025.[2] Con relación a ello, sostuvo que ya había resuelto la solicitud de reconsideración y desestimación[3] presentada por la peticionaria el 29 de septiembre de 2025 con relación a la *Sentencia* de ratificación de custodia, emitida y notificada el 12 de septiembre de 2025 por el foro de instancia.

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 77.
[2] *Íd.*, Entrada Núm. 72.
[3] *Íd.*, Entrada Núm. 48.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* solicitado y revocamos el dictamen recurrido.

## I.

El presente caso inició el 4 de marzo de 2025, cuando el Departamento de la Familia (Departamento o recurrido), por conducto de la trabajadora social Damaris Tirado García (TS Tirado García) presentó una *Petición de Emergencia sobre Remoción y Custodia de Menores (SUMAC)*, a tenor con la Ley Núm. 57 de 11 de mayo de 2023, según enmendada, mejor conocida como la *Ley para Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protección de los Menores*, 8 LPRA sec. 1641 *et seq.* (Ley Núm. 57), en contra de la peticionaria y del señor Orlando Valentín Ascar (señor Valentín Ascar).[4] Mediante la referida petición, el recurrido expuso que la seguridad y bienestar de los menores N.O.V.R., L.O.V.R., N.E.V.R. y L.A.V.R. —hijos de la señora Ramos Otero y del señor Valentín Ascar- así como del menor J.A.R., quien, según surge de la petición, no es hijo de este último, se encontraban en peligro.

En síntesis, expuso que la peticionaria dejaba solos a los menores. Señaló que la residencia en la que estos vivían no tenía servicios básicos y que los menores asistían a la escuela en condiciones precarias. Asimismo, que estos sufrían ausentismo y eran objeto de *bullying* de parte de sus compañeros de clase. Igualmente, indicó que el señor Valentín Ascar no era un recurso viable. En adición, que la peticionaria guardaba pañales sucios en la residencia, no le provee alimentos suficientes, que los menores no cuentan con plan médico y que la señora Ramos Otero dejaba a los menores en el cuidado de personas de dudosa reputación.

---

[4] *Íd.*, Entrada Núm. 1.

En igual fecha, el foro de instancia emitió y notificó una *Resolución y Orden de Remoción y Custodia de Emergencia,* mediante la cual declaró *Ha Lugar* la remoción de los menores y determinó que era innecesario agotar los esfuerzos razonables previos a la remoción por tratarse de una situación de emergencia.[5] Asimismo, consignó que la peticionaria y el señor Valentín Ascar no comparecieron a la vista de remoción de custodia, a pesar de haber sido debidamente citados.

Consecuentemente, el TPI determinó que existían elementos suficientes para remover a los menores y adjudicar su custodia de emergencia al recurrido. Junto con la determinación, el foro de instancia expidió las correspondientes notificaciones sobre la remoción de emergencia y las citaciones a la vista de ratificación de custodia, dirigidas a la señora Ramos Otero y al señor Valentín Ascar.

Posteriormente, el 13 de marzo de 2025, el foro primario celebró la Vista de Ratificación de Custodia, cuya *Minuta* obra en el expediente ante nos.[6] Según se desprende de la misma, la peticionaria no compareció a dicha vista. Es preciso resaltar que, a preguntas del Juez que presidió la misma, la TS Tirado García testificó que llamó telefónicamente a la señora Ramos Otero previo a la vista de remoción de emergencia de custodia y esta le indicó que se encontraba en su trabajo y que, si comparecía, perdería el mismo. Sin embargo, la TS Tirado García indicó que la peticionaria llegó al tribunal luego de que finalizó la vista de emergencia.

Asimismo, la TS Tirado García apuntaló que la señora Ramos Otero recibió personalmente los documentos sobre la remoción y fue notificada del señalamiento de la vista de ratificación de custodia. De igual forma, indicó que se logró comunicar con la peticionaria el

---

[5] *Íd.,* Entrada Núm. 2.
[6] *Íd.,* Entrada Núm. 17.

día antes de la vista de ratificación de custodia y que esta le indicó, según surge de la *Minuta*, que "no asistiría, que el Departamento de la Familia se quedara con los menores y que cualquier cosa, la contactaran por teléfono."[7] De igual forma, respecto al señor Valentín Ascar, quien no era custodio de sus hijos ni residía con la peticionaria, la TS Tirado García indicó que, para el 7 de febrero de 2025, la señora Ramos Otero le envió un mensaje y este le contestó "que no quería saber de sus hijos y que se los regalara a la abuela".[8]

En cuanto a las gestiones realizadas para citar a las partes, la TS Tirado García indicó que el 12 de marzo de 2025 tuvo contacto con la peticionaria y le notificó de la vista de ratificación. Especificó que la señora Ramos Otero firmó la notificación, la petición de emergencia y la resolución judicial sobre la misma. En cuanto al señor Valentín Ascar, manifestó que nunca ha podido contactarlo.

Sin embargo, se desprende de la *Minuta* que, cuando el TPI revisó los documentos a los que hizo referencia la TS Tirado García de la vista de remoción de custodia de emergencia, señaló que constaban las iniciales de la peticionaria en la resolución emitida por el foro de instancia sobre la remoción de emergencia. Ante ello, la TS Tirado García clarificó que le pidió a esta que firmara el documento, pero se limitó a iniciar el mismo y a consignar la fecha. Así pues, a solicitud del recurrido, el TPI anotó la rebeldía a la señora Ramos Otero.

Tras celebrarse la vista, el TPI acogió los hechos contenidos en la resolución y orden de custodia de emergencia y los hechos declarados por la TS Tirado García, por lo que ratificó la remoción de custodia de los menores y ordenó la entrega de la misma al Departamento.

---

[7] *Íd.*, pág. 1.
[8] *Íd.*

Posteriormente, el 19 de agosto de 2025, el recurrido instó una *Moci[ó]n de Privación de Patria Potestad Conforme la Ley 57-2023 Ley para la Prevención del Maltrato, Preservación de la Unidad Familiar y para la Seguridad, Bienestar y Protecci[ó]n de los Menores.*[9] Indicó que la Ley Núm. 57 le permite solicitar la privación de la patria potestad de la madre de aquellos menores que estén bajo su custodia y que para ello es suficiente que la madre se haya sometido a la jurisdicción en alguna de las etapas del proceso, así como que se le haya apercibido sobre las posibles consecuencias. Asimismo, que la referida ley dispone que en los casos donde los tribunales determinen relevar al recurrido de realizar esfuerzos razonables de reunificación, simultáneamente estos privan de patria potestad a los padres que la ostenten.

El 25 de agosto de 2025, el foro *a quo*, tras celebrar una vista de seguimiento sobre plan de servicios el 7 de agosto de 2025, emitió una *Resolución* mediante la cual acogió la recomendación de la trabajadora social para que el plan de permanencia de los menores fuera uno de adopción y señaló la Vista de Privación de Patria Potestad.[10]

En el interín, el 12 de septiembre de 2025, el TPI notificó la *Sentencia* en la que consignó la determinación de ratificación de la remoción de custodia realizada el 13 de marzo de 2025.[11]

Por otra parte, el 22 de septiembre de 2025, la señora Magaly León (señora León) interpuso una *Moci[ó]n Asumiendo Representaci[ó]n Legal, en Solicitud de Intervenci[ó]n y Otros Remedios.*[12] En síntesis, alegó ser la abuela biológica paterna del menor J.A.R. y solicitó intervenir en el presente asunto a los fines de presentarse como potencial candidata para ostentar la custodia

---

[9] *Íd.*, Entrada Núm. 31.
[10] *Íd.*, Entrada Núm. 38. Notificada el 27 de agosto de 2025.
[11] *Íd.*, Entrada Núm. 42.
[12] *Íd.*, Entrada Núm. 44.

de dicho menor. Asimismo, expuso que su hijo, quien falleció recientemente, inició los trámites de inscribir como suyo al menor J.A.R., para lo cual fue entrevistado por el Departamento. En ese sentido, la señora León indicó que deseaba culminar dichos trámites y adoptar al menor J.A.R., en caso de que se le privara a la peticionaria de la patria potestad sobre este. Igualmente, solicitó intervenir para ser considerada como recurso familiar en cualquier plan de permanencia que diseñare el recurrido en el presente caso.

El 25 de septiembre de 2025, el TPI celebró la Vista de Privación de Patria Potestad, cuya *Minuta* obra en el expediente ante nos.[13] Según se desprende de la misma, la peticionaria no compareció y la TS Tirado García sostuvo que se había comunicado con ella. Asimismo, sostuvo que la señora Ramos Otero le indicó que entendía que no podía hacer nada por sus hijos. Añadió que le informó a la peticionaria sobre el proceso de privación de patria potestad y apuntaló que esta no tiene contacto con sus hijos desde el día de la remoción de custodia, con la excepción de una videollamada en la que la peticionaria les informó a los menores que se había ido a Estados Unidos.

Asimismo, surge que la TS Tirado García testificó que, el 7 de agosto de 2025, la señora Ramos Otero compareció a su oficina tras su regreso de Estados Unidos, mas no asumió responsabilidades hacia sus hijos ni tuvo contacto con ellos.

Justipreciado el asunto, surge de la *Minuta* que el TPI determinó privar a la peticionaria de la patria potestad de sus hijos.

El 26 de septiembre de 2025, la señora Ramos Otero presentó un documento intitulado como *Moci[ó]n Urgente Sin Someternos a la Jurisdicci[ó]n Asumiendo Representaci[ó]n Legal.*[14] En específico, solicitó acceso al expediente del caso e indicó que su comparecencia

---

[13] *Íd.*, Entrada Núm. 49.
[14] *Íd.*, Entrada Núm. 45.

no equivalía a someterse a la jurisdicción del TPI, toda vez que no había sido emplazada conforme a derecho, así como que se reservaba plantear la defensa sobre falta de jurisdicción sobre la persona.

Así las cosas, el 25 de septiembre de 2025, el TPI emitió una *Orden* en la que denegó la solicitud de intervención de la señora León por no cumplir con el Artículo 39 de la Ley Núm. 57, *supra*.[15]

Posteriormente, el 29 de septiembre de 2025, la peticionaria interpuso una *Urgente Moci[ó]n en Reconsideraci[ó]n sobre Sentencia [de] 12 de septiembre y Solicitud de Desestimación*.[16] En síntesis, señaló que nunca fue emplazada, por lo que el foro primario no asumió jurisdicción sobre su persona ni sobre el asunto. Resaltó que la Ley Núm. 57 es específica sobre las advertencias y notificaciones que deben realizarse a los padres sobre la patria potestad y ello no ocurrió. De igual forma, indicó que, para el procedimiento de patria potestad, tampoco se satisfizo el proceso de emplazamiento requerido por ley. Consecuentemente, solicitó al foro *a quo* que desestimara el presente caso.

El 14 de octubre de 2025, la señora León interpuso una *Moci[ó]n en Solicitud de Reconsideraci[ó]n y Reiterando Solicitud de Intervenci[ó]n a Tenor con las Disposiciones del Art[í]culo 39 de la Ley 57* en la que reiteró su solicitud de intervención.[17] Sin embargo, el 20 de octubre de 2025, el foro de instancia emitió y notificó una *Orden* en la que denegó la solicitud de reconsideración instada por la señora León.[18]

Por otro lado, el 24 de octubre de 2025, el Departamento interpuso su oposición a la solicitud de desestimación de la peticionaria, mediante una *Moci[ó]n Cumplimiento [sic] de Orden*.[19]

---

[15] *Íd.*, Entrada Núm. 46. Notificada el 29 de septiembre de 2025.
[16] *Íd.*, Entrada Núm. 48.
[17] *Íd.*, Entrada Núm. 53.
[18] *Íd.*, Entrada Núm. 60.
[19] *Íd.*, Entrada Núm. 62.

Esencialmente, señaló que la Ley Núm. 57 dispone que, para realizar el procedimiento de privación de patria potestad, es suficiente que el padre o madre se haya sometido a la jurisdicción en alguna de las etapas del proceso y se le haya apercibido sobre las posibles consecuencias. En ese sentido, expuso que el foro de instancia adquirió jurisdicción sobre la señora Ramos Otero toda vez que esta se sometió a un plan de servicios, previo a los procesos de remoción y ratificación.

Además, apuntaló que, en todo momento, la peticionaria fue orientada y notificada sobre las etapas del procedimiento, de modo que se cumplió con el debido proceso de ley. Igualmente, expuso que los requisitos de emplazamiento se activan únicamente cuando la promovida no es parte en ninguna etapa de proceso y que, en el presente caso, el único requisito es interponer una moción escrita para iniciar el proceso de privación. Junto con su escrito, acompañó una serie de documentos sobre los que adujo que estaban firmados por la señora Ramos Otero y constituían evidencia de las múltiples ocasiones en las que esta fue notificada sobre la vista de privación de patria potestad, a la cual, según indicó el recurrido, siempre se negó a comparecer.[20]

El 29 de octubre de 2025, el foro de instancia emitió una *Orden* en la que indicó que denegaba la solicitud de reconsideración presentada en la entrada número 53 del expediente electrónico.[21]

No conteste, el 26 de noviembre de 2025, la peticionaria presentó un recurso de *certiorari* ante esta Curia, mediante la cual cuestionó la denegatoria de su solicitud de desestimación.[22] En su escrito, la señora Ramos Otero expuso la determinación judicial

---

[20] En específico, los documentos anejados fueron los siguientes: (1) *Referido a Centro de Salud Integral*; (2) *entrevista en oficina local*; (3) *hojas de referimientos*; (4) *notas de progreso*; (5) *plan de servicios*; y (6) *evidencia de abandono de juri[s]dicci[ó]n. Veáse*, SUMAC TPI, Entrada Núm. 62, Anejos.

[21] SUMAC TPI, Entrada Núm. 63. Notificada el 30 de octubre de 2025.

[22] *Íd.,* Entrada Núm. 68. Véase, además, *Ramos Otero v. Departamento de la Familia*, Caso Núm. TA2025CE00819.

recurrida hacía referencia a una entrada del expediente electrónico equivocada y que la *Orden* debía indicar que la misma era en referencia a la entrada número 48 del expediente electrónico, la cual corresponde a su solicitud de desestimación.

Sin embargo, el 10 de diciembre de 2025, un Panel hermano de este Tribunal, emitió y notificó una *Resolución* en la que desestimó el recurso interpuesto, tras entender que recurría de una determinación que no había sido resuelta por el foro de instancia, y consecuentemente, adolecía de ser prematuro.[23] Cabe precisar que, sobre lo anterior, el 12 de diciembre de 2025, la señora Ramos Otero interpuso una *Urgente Moci[ó]n de Reconsideraci[ó]n* en la que reiteró que la orden recurrida, aunque hacía referencia a una entrada equivocada, realmente disponía de su solicitud.[24] Dicho petitorio fue declarado *No Ha Lugar* por el Panel hermano mediante *Resolución* emitida el 16 de diciembre de 2025.[25]

Así las cosas, el 17 de diciembre de 2025, la peticionaria interpuso ante el TPI una *Urgente Moci[ó]n en Solicitud* en la que peticionó a dicho foro que, a la luz de lo resuelto por el Panel hermano de esta Curia, resolviera la moción de desestimación por falta de jurisdicción sobre la persona.[26]

Ante ello, el 19 de diciembre de 2025, el foro de instancia emitió una *Orden* en la que denegó la solicitud e indicó que la moción de desestimación ya había sido resuelta.[27]

Siendo así, y aun inconforme, el 21 de enero de 2026, la señora Ramos Otero compareció ante nos, mediante un *Recurso de Certiorari en Solicitud de Revisión Judicial,* y señaló al TPI por la comisión de los siguientes errores:

---

[23] SUMAC TA, *Ramos Otero v. Departamento de la Familia,* Caso Núm. TA2025CE00819, Entrada Núm. 5.
[24] SUMAC TA, *Ramos Otero v. Departamento de la Familia,* Caso Núm. TA2025CE00819, Entrada Núm. 7.
[25] *Íd.,* Entrada Núm. 8. Notificada el 17 de diciembre de 2025.
[26] SUMAC TPI, Entrada Núm. 72.
[27] *Íd.,* Entrada Núm. 77. Notificada el 22 de diciembre de 2025.

### A. PRIMER ERROR

Erró el Tribunal de Primera Instancia y abusó de su discreción en no desestimar el pleito por falta de jurisdicción sobre la persona cuando la parte promovida no ha sido emplazada ni notificada conforme a derecho.

### B. SEGUNDO ERROR

Erró el Tribunal de Primera Instancias [sic] y abusó de su discreción en realizar vista de privación de patria potestad al amparo de la Ley 57 de 2023 sin la debida notificación y emplazamiento a los padres de los menores.

### C. TERCER ERROR

Erró el Tribunal de Primera Instancia y abusó de su discreción en no cumplir con el Artículo 34 de la Ley 57 de 2023 y no emitir Sentencia en un término no mayor de 60 días desde que los menores fueron ubicados en cuidado sustituto, por lo que la madre no pudo enterarse de dicha ratificación de remoción de menores.

Igualmente, el 19 de febrero de 2026, la peticionaria presentó un *Auxilio de Jurisdicci[ó]n y en Solicitud [de] que se Evalúe la Controversia sin la Comparecencia del Departamento de la Familia.*[28] Mediante el mismo, solicitó la paralización de los procedimientos ante el TPI, dentro de los cuales estaba señalada una vista para el 12 de marzo de 2026 pues, de no resolverse el asunto con premura, se ocasionaría un daño inminente.

Ese mismo día, el recurrido compareció mediante *Escrito en Cumplimiento de Resolución del Departamento de la Familia,*[29] e igualmente, emitimos y notificamos una *Resolución* en virtud de la cual declaramos *No Ha Lugar* el auxilio de jurisdicción interpuesto por la señora Ramos Otero.[30]

En su escrito, el Departamento aduce que el TPI asumió jurisdicción sobre la persona de la peticionaria, toda vez que esta se sometió al plan de servicios. En ese sentido, expone que la Ley Núm. 57, *supra,* permite que se inicien los procedimientos de privación de patria potestad en su contra con la mera presentación de una

---

[28] SUMAC TA, Entrada Núm. 5.
[29] *Íd.,* Entrada Núm. 6.
[30] *Íd.,* Entrada Núm. 7.

moción a esos efectos. Por otra parte, esgrime que la señora Ramos Otero era notificada de cada etapa de los procedimientos ventilados.

Así las cosas, el 27 de febrero de 2026, la señora Ramos Otero presentó una *Solicitud de Reconsideración Sobre el Auxilio de Jurisdicción.*[31] El 3 de marzo de 2026, emitimos y notificamos una *Resolución* mediante la cual declaramos No Ha Lugar el petitorio de reconsideración.[32]

Así pues, con el beneficio de la comparecencia de ambas partes y del expediente ante nos, procedemos a disponer del presente recurso, no sin antes delimitar la normativa jurídica aplicable.

## II.

### -A-

En Puerto Rico, existe una clara política pública de velar por el bienestar y los mejores intereses de los menores de edad. *Marrero Reyes v. García Ramírez,* 105 DPR 90, 104 (1976). En atención a ello, se promulgó la Ley Núm. 57, *supra,* cuya Exposición de Motivos establece como política pública que:

> [E]l Gobierno no puede esperar a que un menor sea víctima de maltrato o negligencia para intervenir y tratar de remediar la situación. Por ende, la mejor política requiere que el enfoque, como primera alternativa, sea la prevención del maltrato y negligencia, así como la preservación de la unidad familiar por medio de una intervención temprana con familias donde exista un riesgo de esta índole para el menor, y por medio de la provisión de servicios a estos de consejería, tratamiento, educación, entre otros, que sean basados en evidencia e informados en trauma. Lo anterior es factible siempre y cuando la permanencia del menor con su familia garantice su seguridad y mejor bienestar. [. . .]

Asimismo, la referida ley dispone ciertos procedimientos mediante los cuales el Estado interviene en aquellas situaciones de familia en las que los menores de edad se encuentren en peligro.

---

[31] *Íd.,* Entrada Núm. 9.
[32] *Íd.,* Entrada Núm. 10.

Particularmente, el Artículo 32 de la Ley Núm. 57, 8 LPRA sec. 1698, establece un procedimiento de emergencia cuyo objetivo es proteger a un menor que se encuentra en una situación de riesgo tan inminente que justifica su remoción del hogar sin realizar esfuerzos razonables para preservar la unidad familiar.

La referida disposición estatutaria dispone, en lo pertinente, lo siguiente:

(a) Cuando se haya obtenido la custodia de emergencia, conforme a los Artículos 9, 12, o 13 de esta ley, o cuando un menor se encuentra en una situación de riesgo inminente y no procede llevar a cabo los esfuerzos de preservación familiar y seguridad descritos en el Artículo 12, el manejador del caso del Departamento podrá comparecer y declarar bajo juramento, ante un Juez Municipal del Tribunal de Primera Instancia, en forma general, breve y sencilla, mediante un formulario preparado por la Oficina de la Administración de Tribunales al efecto, los hechos específicos que dan base a solicitar la protección del menor mediante una remoción de su hogar, al igual que todos los esfuerzos razonables realizados por el Departamento previo a la presentación de la solicitud para lograr la preservación del menor en su hogar. Si el Departamento alega que no se hicieron esfuerzos razonables, o que no procede hacer estos, este deberá desglosar los hechos específicos y los fundamentos aplicables bajo el Artículo 44 de la presente ley que le lleva a hacer dicho planteamiento. El tribunal no exigirá la radicación de informe alguno por parte del Departamento de la Familia para poder celebrar la vista descrita en este Artículo.

(b) Durante la vista a celebrarse bajo este Artículo, el tribunal siempre indagará sobre los esfuerzos razonables de preservación familiar que el Departamento llevó a cabo previo a solicitar la custodia de emergencia bajo este Artículo, incluyendo medidas como la implementación de un plan de seguridad o un plan de preservación. En los casos donde el Departamento alegue que se llevaron a cabo dichos esfuerzos razonables pero aun así la remoción del menor de su hogar es necesaria, o que no procede llevar a cabo esfuerzos razonables, el tribunal debe evaluar si aplica alguna excepción de las contempladas por el Artículo 44 de esta ley para obviar el requisito de hacer esfuerzos razonables, o si las circunstancias particulares del caso presentaban un cuadro fáctico donde el menor enfrentaba un riesgo inminente o una situación de maltrato, y realizar dichos esfuerzos razonables hubiese representado un peligro a la salud y a la seguridad del menor.

[. . .]

(g) *Notificación de la resolución y orden.* —Toda resolución y orden de remoción expedida por el tribunal conforme al presente Artículo se notificará simultáneamente a las siguientes personas y partes:

(1) Personas que ostenten la patria potestad sobre el menor, cumpliendo también con lo dispuesto sobre emplazamientos;

[. . .]

(6) Esta notificación se hará en un término no mayor de las setenta y dos (72) horas de haberse expedido cualquier resolución y orden.

(Bastardillas en el original).

Así pues, la referida notificación tiene el propósito de apercibir a las partes promovidas de la determinación judicial así como del proceso de ratificación de custodia que se señale.

A su vez, el Artículo 33 de la referida ley, 8 LPRA sec. 1699, establece el procedimiento de emplazamientos en los antedichos procesos. En específico, dispone, en lo pertinente, como sigue:

**(a) En todo caso donde el tribunal ordene la remoción del menor de su hogar conforme a las disposiciones del Artículo 32 de la presente ley, y la parte promovida no comparezca a dichos procedimientos de emergencia, o se desconozca su paradero será deber de este el ordenar que se expidan y se diligencien de inmediato emplazamientos dirigidos a la parte promovida y a toda persona que ostente patria potestad sobre el menor o aquella que resultarían privada de la custodia en la vista bajo el Artículo 34 de esta Ley y que no haya comparecido en dicho procedimiento o que no se hayan sometido a la jurisdicción del tribunal.** La expedición y diligenciamiento del emplazamiento se hará conforme a lo indicado en este Artículo, excepto donde se disponga lo contrario.

**(b) Dichos emplazamientos se expedirán conforme a la Regla 4.2 de las de Procedimiento Civil de 2009. Los emplazamientos deberán advertir que se exigirá la comparecencia de la parte contra quien se diligencia en la fecha determinada para una vista bajo el Artículo 34 de la presente ley, apercibiéndole que de así no hacerlo podrá anotársele la rebeldía y dictarse sentencia en su contra concediéndose el remedio solicitado, que puede incluir la ubicación permanente de un menor fuera de su hogar, el inicio de procesos para la privación de patria potestad, entre otros, y cualquier otra información pertinente.**

[. . .]

(d) De la parte promovida o la parte que resultaría privada de la custodia del menor ocultarse, desconocerse su paradero, o se encuentre fuera de Puerto Rico, el Departamento informará por moción al tribunal de los esfuerzos razonables llevados a cabo para emplazarla personalmente dentro del término dispuesto, proveerá la última dirección residencial, postal, y electrónica conocida del promovido, al igual que su número de teléfono, de tener estos datos, y solicitará orden al tribunal para emplazar por medios alternos.

El tribunal deberá atender esta solicitud de forma inmediata, emitiendo orden el mismo día en que se presente dicha moción, y dispondrá a través de que medio alterno se emplazará a la parte promovida o la parte que resultaría privada de la custodia del menor. Estos medios alternos

incluyen la entrega de copia del emplazamiento y los documentos indicados en la sección anterior por correo regular a su última dirección conocida, por correo electrónico a su última dirección de correo electrónico conocida, o de la manera que el tribunal estime más adecuada conforme al ordenamiento vigente. El emplazamiento por medios alternos deberá llevarse a cabo en un término no mayor de tres (3) días a partir de emitirse la orden aquí descrita.

[. . .]

**(f) El emplazamiento diligenciado de conformidad a lo contenido en este Artículo será suficiente en derecho y conferirá jurisdicción al tribunal para hacer determinaciones que podrán incluir el ubicar permanentemente a un menor fuera de su hogar, así como la privación de patria potestad, entre otras medidas con las que cuente este en el mejor interés del menor. Cuando una parte haya sido emplazada personalmente o mediante edictos conforme aquí se dispone, haya o no haya comparecido en alguna etapa de los procedimientos, el tribunal podrá privarla de patria potestad, sin que sea necesario un emplazamiento adicional.**

(g) El emplazamiento de la parte que ostenta la custodia legal del menor será suficiente para la celebración de la vista de ratificación de custodia de conformidad a los asuntos dispuestos en el Artículo 34 de esta Ley.

(Énfasis suplido).

Cónsono con lo anterior, la Exposición de Motivos de la Ley Núm. 57, *supra*, establece, en lo pertinente, lo siguiente:

Esta ley también define mejor los criterios de lo que será el debido proceso de ley en cuanto a la notificación y oportunidad de comparecer y ser oído de las partes promovidas en casos de protección a través de la implementación de la figura del emplazamiento para todo aquel que no comparezca voluntariamente a estos, sometiéndose así a la jurisdicción del Tribunal. Nótese que el mecanismo del emplazamiento incorporado para estos procesos es un tanto más informal que aquel descrito en la Regla 4 de las de Procedimiento Civil. Por ejemplo, este emplazamiento debe diligenciarse personalmente y no así por edictos. También se permite el diligenciamiento de este a la parte promovida por medios alternos como por correo regular, o por correo electrónico.

Estos mecanismos de emplazamiento atenuados responden al interés apremiante del Gobierno del Estado Libre Asociado de Puerto Rico en la tramitación con celeridad de estos casos, para poder así disponer de una controversia que puede poner en jaque el bienestar de un menor, y a la misma vez cumplir también con el término de tiempo relativamente corto que el Gobierno de los Estados Unidos de América provee para que los estados y territorios celebren una vista de ratificación de custodia, y emitan un dictamen final a esos efectos. Si los rigores de la Regla 4 de las de Procedimiento Civil existen para promover una notificación adecuada a una parte de un procedimiento civil en su contra, lo cierto es que sería insostenible el iniciar y tramitar un proceso de protección de menores aplicando esta, sin generarse atrasos significativos en el pleito que pueden causarle mayor daño y trauma al

menor envuelto. **El objetivo es lograr un balance entre esos tres intereses fundamentales: el respeto al derecho a un debido proceso de ley del que goza el promovido, la necesidad de atender y resolver estas controversias con prontitud por el bienestar del menor, y también el cumplimiento con requisitos impuestos por legislación federal**. [. . .]

(Énfasis suplido).

En ese sentido, la propia ley refleja la relevancia de la figura del emplazamiento y el cumplimiento del debido proceso de ley en este tipo de casos.

-**B**-

La Constitución de Puerto Rico, en su Artículo II, Sección 7, establece que "[n]inguna persona será privada de su libertad o propiedad sin [un] debido proceso de ley." A esos efectos, es harto conocido que el debido proceso de ley es un derecho fundamental que "encarna la esencia de nuestro sistema de justicia". *López y otros v. Asoc. de Taxis de Cayey*, 142 DPR 109 (1996). Además, se define como aquel "derecho de toda persona a tener un proceso justo y con todas las debidas garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Aut. Puertos v. HEO*, 186 DPR 417, 428 (2012); *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995). Particularmente, el debido proceso de ley se manifiesta en dos vertientes: sustantivo y procesal. *Rivera Rodríguez & Co. v. Stowell Taylor*, 133 DPR 881, 887 (1993); *Rodríguez Rodríguez v. Estado Libre Asociado de Puerto Rico*, 130 DPR 562, 576 (1996).

Bajo el debido proceso de ley sustantivo, "los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas". *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 887; *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 273 (1987). De este modo, al aprobar leyes o al realizar alguna actuación, el Estado está vedado de afectar

irrazonable, arbitraria o caprichosamente los intereses de propiedad o libertad. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 887.

Por otro lado, mediante la vertiente procesal, el Estado posee la obligación de garantizar que la interferencia con los intereses de propiedad y libertad del individuo se realice a través de un proceso que sea justo y equitativo. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, págs. 887-888; *López Vives v. Policía de PR*, 118 DPR 219, 231 (1987). Para que entre en vigor el debido proceso de ley procesal debe tratarse de un interés individual de libertad o propiedad. *Rivera Santiago v. Srio. de Hacienda, supra*, págs. 273-274.

En ese sentido, el Tribunal Supremo de Puerto Rico expuso que:

> La característica medular de este derecho es que el procedimiento que siga el Estado sea justo (*fair*). La garantía esencial de la cláusula de debido proceso es que sea justa. El procedimiento debe ser fundamentalmente justo al individuo en la resolución de los hechos y derechos que sirven de base para aquellas acciones gubernamentales que le privan de su vida, libertad o propiedad. Si bien situaciones diferentes pueden imponer diferentes tipos de procedimientos, siempre está el requisito general de que el proceso gubernamental sea justo e imparcial.
>
> *Hernández v. Secretario*, 164 DPR 390, 395 (2005) (cita depurada) (bastardillas en el original).

Una vez cumplida esta exigencia, se debe determinar cuál es el proceso exigido. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, pág. 888. Dentro de los procesos adversativos, existen varios requisitos que se deben satisfacer para garantizar las exigencias mínimas del debido proceso de ley. Específicamente, **(1) la notificación oportuna y adecuada del proceso**; (2) el derecho a ser oído; (3) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (4) la asistencia de un abogado; (5) la presencia de un juzgador imparcial; y (6) una decisión que se fundamente en la prueba presentada y admitida en juicio. *Hernández v. Secretario, supra*, págs. 395-396; *López y otros*

*v. Asoc. de Taxis de Cayey, supra*; *Ortiz Cruz v. Junta Hípica*, 101 DPR 791, 795 (1973).

En particular, "'[l]a notificación es parte integral de una actuación judicial y para que una resolución u orden surta efecto, tiene que ser no solamente emitida por un tribunal con jurisdicción, sino también notificada adecuadamente a las partes ya que es a partir de la notificación que comienzan a cursar los términos establecidos'". *Banco Popular v. Andino Solís*, 192 DPR 172, 183 (2015) (citando a R. Hernández Colón, *Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 193).

Por lo tanto, "una notificación defectuosa o la ausencia de esta, incide sobre los derechos de las partes, enervando así las garantías procesales que estamos llamados a proteger". *Banco Popular v. Andino Solís, supra*, págs. 183-184.

**-C-**

El recurso de *certiorari* es un auto procesal extraordinario por el cual un peticionario solicita a un tribunal de mayor jerarquía que revise y corrija las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023). Es norma reiterada que, una resolución u orden interlocutoria, contrario a una sentencia, es revisable ante el Tribunal de Apelaciones mediante auto de *certiorari*. *Rivera et al. v. Arcos Dorados et al.*, supra. A diferencia del recurso de apelación, el tribunal revisor tiene la facultad de expedir el auto de *certiorari* de manera discrecional. *Torres González v. Zaragoza Meléndez*, supra, pág. 847.

Por su parte, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, limita la facultad que tiene el foro apelativo intermedio para revisar las resoluciones u órdenes interlocutorias que emite el foro primario. *Rivera et al. v. Arcos Dorados et al., supra*, 207-208. La antedicha regla establece, en lo pertinente, lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, **en casos de relaciones de familia**, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

(Énfasis suplido).

El delimitar la revisión a dichas instancias específicas tiene como propósito evitar las "dilaciones innecesarias, el fraccionamiento de causas y las intervenciones a destiempo." *800 Ponce de León v. AIG*, 205 DPR 163, 191 (2020).

Por otro lado, el examen que hace esta Curia previo a expedir un auto de *certiorari* no se da en el vacío ni en ausencia de otros parámetros. *Torres González v. Zaragoza Meléndez, supra*, pág. 428; *800 Ponce de León v. AIG, supra*, pág. 176. En ese sentido, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), señala los criterios que debemos tomar en consideración al evaluar si procede expedir el auto de *certiorari. BPPR v. SLG Gómez-López,* 213 DPR 314, 336-337 (2023). La referida regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio, como tampoco constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 n. 15 (2005).

Por lo que, de los factores esbozados se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida como la etapa del procedimiento en la cual fue presentada. Lo anterior, a los fines de determinar si es la más apropiada para intervenir sin ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Es norma reiterada que, el foro apelativo debe ejercer su facultad revisora solamente en aquellos casos en los cuales se demuestre que el dictamen que emitió el foro de instancia es arbitrario o constituye un exceso de discreción. *BPPR v. SLG Gómez-López, supra*, pág. 334.

Expuesta la normativa jurídica aplicable, procedemos disponer del recurso instado ante nos.

### III.

En el presente caso, la peticionaria señala la comisión de tres (3) errores por parte del TPI.

En primer lugar, aduce que el foro de instancia se equivocó al no desestimar el presente asunto y, en segunda instancia, que erró al celebrar la vista de privación de patria potestad, aun cuando

adolece de falta de jurisdicción de la persona. Por último, que el foro *a quo* se equivocó al no cumplir con la disposición estatutaria que exige se dicte sentencia dentro de un término de 60 días desde que los menores fueron ubicados en cuidado sustituto.

Toda vez que están relacionados entre sí, discutiremos los primeros dos (2) señalamientos de error planteados por la señora Ramos Otero.

Como vimos, el debido proceso de ley es un principio constitucional que vela porque el Estado garantice que la interferencia con los derechos de los individuos se realice dentro de un proceso justo y equitativo. *Rivera Rodríguez & Co. v. Stowell Taylor, supra*, págs. 887-888; *López Vives v. Policía de PR, supra*, pág. 231. Entre las garantías del debido proceso de ley, se encuentra la notificación oportuna y adecuada del proceso. *Hernández v. Secretario, supra*, págs. 395-396; *López y otros v. Asoc. de Taxis de Cayey, supra*. Precisamente, "una notificación defectuosa **o la ausencia de esta**, incide sobre los derechos de las partes, enervando así las garantías procesales que estamos llamados a proteger." *Banco Popular v. Andino Solís, supra*, págs. 183-184 (énfasis suplido).

Cónsono con lo anterior, el Artículo 33 de la Ley Núm. 57, 8 LPRA sec. 1699, es explícito en cuanto al requisito de notificar adecuadamente a las partes promovidas que no comparecieron a los procesos de remoción de custodia de emergencia.

Asimismo, la notificación adecuada sobre dicho proceso confiere jurisdicción al TPI para celebrar los procedimientos posteriores, como el de ratificación de custodia, e incluso, otorga poder al referido foro para privar de la patria potestad a las partes promovidas que fueron emplazadas o notificadas sobre el proceso de conformidad con las disposiciones de la Ley Núm. 57, *supra*.

En el presente caso, surge del expediente que, tras celebrarse la vista de remoción de custodia de emergencia, fueron expedidos los emplazamientos para que las partes promovidas fueran notificadas de los procedimientos y apercibidas del trámite de ratificación de custodia. Sin embargo, no surge que la notificación expedida a nombre de la señora Ramos Otero haya sido diligenciada, conforme lo exige la Ley Núm. 57, *supra*, para que el foro de instancia adquiriera jurisdicción sobre su persona.

Más bien, según se desprende de la *Minuta* de la Vista de Ratificación de Custodia, la TS Tirado García manifestó que, el día antes de dicha vista, orientó a la peticionaria sobre el procedimiento, le informó cuándo este se celebraría y tomó sus iniciales sobre la resolución que emitió el TPI tras celebrar la vista de remoción de custodia de emergencia. No obstante, lo anterior no es suficiente para que el TPI haya advenido en jurisdicción sobre la persona de la peticionaria, de modo que pudiera declararla en rebeldía y continuar los trámites sin su comparecencia. En ese sentido, el Artículo 33 de la Ley Núm. 57, 8 LPRA sec. 1699, dispone como un deber el que se expidan y diligencien emplazamientos dirigidos a las partes promovidas que no comparezcan al proceso de remoción de custodia de emergencia. Inclusive, el referido artículo, en su inciso (d), permite el emplazamiento por medios alternos, si la parte promovida o quien resulte afectada en la privación de custodia se oculta, se desconoce su paradero o se encuentra fuera de Puerto Rico. Ello es necesario, según lo establece el inciso (f) del antedicho artículo, para que el tribunal adquiera jurisdicción y ostente la autoridad de hacer determinaciones que pueden incluir hasta la privación de patria potestad.

Lo anterior es así para salvaguardar las garantías constitucionales de que, en cualquier procedimiento dentro del cual una persona pueda verse afectada en sus derechos y obligaciones

jurídicas, se cumpla con el debido proceso de ley y se preserven los derechos mínimos que este asegura.

Establecido lo anterior, no compartimos la apreciación del Departamento en cuanto a que la peticionaria se sometió a la jurisdicción del TPI por haberse sometido al plan de servicios. Más bien, somos del criterio que la sumisión voluntaria de la parte promovida a la jurisdicción de los tribunales en procesos de remoción de custodia se configura cuando dicha parte se somete a los **procesos judiciales** que se ventilen, y no a los planes de servicios que desarrolle el Departamento para un caso determinado, pues estos constituyen **procesos administrativos** ante la agencia.

En ese sentido, no surge del expediente que la señora Ramos Otero haya comparecido formalmente a los procesos ante el TPI y se haya conducido de manera que pueda colegirse que se sometió voluntariamente a la jurisdicción del tribunal. Todo lo contrario, las comparecencias de la peticionaria han sido específicamente sin someterse a la jurisdicción y en señalamiento de la falta de jurisdicción *in personam*.

Añádase a ello que, surge de la *Minuta* de la vista de ratificación celebrada el 13 de marzo de 2025 que, el TPI únicamente indagó sobre la incomparecencia de los padres, al examinar la presunta notificación de la vista a la peticionaria por conducto de la trabajadora social y determinó que era suficiente. Erró en su proceder.

La Ley 57, *supra*, en su sección 1699 establece sin ambigüedad alguna, que ante la incomparecencia de la parte promovida en todo caso que se ordene la remoción del menor de su hogar, procede la expedición de un emplazamiento, conforme la Regla 4.2 de las Reglas de Procedimiento Civil, *supra*. Además, específicamente establece que, el emplazamiento podrá ser diligenciado personalmente por cualquier persona descrita en la

Regla 4.3 (a) de las Reglas de Procedimiento Civil, *supra*. Al examinar dicho artículo se desprende que, el diligenciamiento debería ser por un alguacil, alguacila, persona no menor de 18 años y más importante aún, que no tenga interés en el pleito.

Por lo tanto, toda vez que, en el presente caso, no se notificó adecuadamente a la señora Ramos Otero, es forzoso concluir que el TPI nunca advino en jurisdicción para celebrar la Vista de Ratificación de Custodia ni la Vista de Privación de Patria Potestad. Consecuentemente, el primer y segundo señalamiento de error fueron cometidos.

No obstante, ello no dispone del asunto. De entrada, nótese que la Ley Núm. 57, *supra*, establece los trámites de remoción de custodia de emergencia, y la propia naturaleza de dichos estos, así como el claro objetivo de rescatar a los menores de los riesgos inminentes a los cuales estén expuestos, es indubitado que los procedimientos pueden celebrarse sin la comparecencia de las partes promovidas. En tal sentido, la discusión mediante la cual atendimos los primeros dos (2) señalamientos de error, no es aplicable a dicho procedimiento de emergencia.

Habiendo dicho esto, en el caso de autos, el expediente es abrumador en cuanto al riesgo inminente en el cual, sin duda alguna, los menores estuvieron cuando se encontraban en la custodia de la peticionaria. En ese sentido, es innegable que la intervención de emergencia del recurrido sobre los menores y la remoción de la custodia eran más que justificados y se circunscribieron a los criterios establecidos en la Ley Núm. 57, *supra*.[33]

---

[33] *Véase* Artículo 25-A de la Ley Núm. 57, 8 LPRA sec. 1691.

Consecuentemente, no procede la desestimación de la causa y queda inalterada la *Resolución y Orden de Remoción y Custodia de Emergencia*, emitida y notificada el 4 de marzo de 2025 por el foro de instancia, mediante la cual otorgó la custodia de los menores al Departamento en la etapa preliminar de los procesos.

Por todo lo anterior, resolvemos expedir el auto de *certiorari* solicitado a los fines de revocar la *Sentencia* de ratificación de custodia, así como dejar sin efecto la determinación de privación de patria potestad, y ordenar que se señale la celebración de una nueva Vista de Ratificación de Custodia. Asimismo, se ordena que se expidan nuevos emplazamientos dirigidos a las partes promovidas para que sean diligenciados de conformidad con la Ley Núm. 57, *supra*. De esa forma, se garantiza que la peticionaria, si así lo estima, pueda conocer y ser parte de la Vista de Ratificación de Custodia y de los demás procedimientos que, posteriormente, se celebren.

Así pues, por cuanto lo anterior dispone del recurso ante nuestra consideración, no es necesario discutir los méritos del tercer señalamiento de error planteado por la señora Ramos Otero.

**IV.**

Por las razones discutidas anteriormente, resolvemos expedir el auto de *certiorari* solicitado y se revoca el dictamen recurrido. De igual forma, dejamos sin efecto la determinación de privación de patria potestad y ordenamos que se celebre una nueva Vista de Ratificación de Custodia, así como que se expidan y diligencien nuevos emplazamientos dirigidos a las partes promovidas.

**Notifíquese inmediatamente**.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Mateu Meléndez concurre con el resultado con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
